FRANK C. MANN, Trustee of Estate of JOHN A. READY, Appellant, v. BANK OF GREENFIELD, and S. L. CANTLEY, Commissioner of Finance.—20 S. W. (2d) 502.

Division Two, October 4, 1929.

1002

*George W. Goad* and *Mann & Mann* for appellant.

*Thos. W. Martin* and *Allen McReynolds* for respondents.

DAVIS, C.—This is an action on a contract. The petition comprises four counts, and each hypothesizes the theory that the Dade County Bank knowingly and wrongfully appropriated and used the assets of a trust estate without consideration therefor, and that thereafter the Dade County Bank, in liquidation, entered into a contract with defendant bank, wherein defendant, in consideration of the transfer to it of certain assets, assumed and agreed to pay, except capital stock and surplus, the liabilities of said Dade County Bank. A jury was waived. At the close of all the evidence the trial court gave declarations of law as to each count, to the effect that, under the pleadings, plaintiff was not entitled to recover. It also gave a declaration of law that notice or knowledge of Van Osdell (cashier of said Dade County Bank and testamentary trustee of said trust estate) did not constitute notice or knowledge to said bank. The trial court then rendered judgment for defendant, and plaintiff appealed.

The facts developed for plaintiff warrant the finding that John A. Ready died in 1911 or 1912, leaving a will appointing Edwin Harrison and Floyd Q. Van Osdell executors thereof. They were also appointed trustees of Ready's estate. The estate was finally administered, and the trustees took charge of the assets as such on May 21, 1913. Harrison and Van Osdell were at that time, respectively, the cashier and assistant cashier of the Dade County Bank. Harrison resigned as cashier in 1917, and, in 1918, severed his connection with the bank and moved to Oklahoma. In 1918 Van Osdell was elected cashier of said bank. While Harrison remained a trustee of Ready's estate even after removal, Van Osdell in fact was the trustee active in its management. In addition, Van Osdell from 1918 until his resigna-

tion in December, 1922, was the only active and operating officer of the Dade County Bank. However, one Grether was in the bank as assistant cashier. The assets received by the trustees of the Ready estate amounted to not less than $22,000, and were comprised of notes secured by first mortgages.

It appears that the Dade County Bank in 1918 was financially troubled. A client of said bank was the Greenfield Electric Company. Its officers and directors were officers and directors of the bank. It was indebted to the bank in the sum of $12,000 or more. Its earnings aggregated $500 or $600 a month, but its operating expenses were in excess of its earnings. It was unable to reduce its indebtedness to the bank. The bank examiner objected to this line of credit, and insisted that the directors indorse its notes. It also had an overdraft in the bank for $500, for which it gave the bank its note. Van Osdell on June 12, 1918, and May 1, 1919, respectively, to decrease the light company's indebtedness and to take care of the overdraft, drew checks on and payable to the Dade County Bank for $2500 and $500 on the account of the Ready estate, and in lieu thereof substituted and placed as assets of the Ready estate two unsecured notes of the light company for $2500 and $500, respectively. The buildings of the light company burned without insurance. Later a sale of its remaining property was arranged, and, in order to effect a sale, these two notes placed in the Ready estate were delivered to the purchaser without consideration to the Ready estate. The money received from the sale was applied to the indebtedness of the light company to the Dade County Bank.

On February 13, 1919, the Dade County Bank held the note of Johnson, a brother-in-law of Van Osdell, for $1500, secured by a chattel mortgage on live stock, which was neither ackowledged, recorded nor filed for record. The note, about six months old, and other obligations of Johnson, were objected to by the bank examiner and the bank directors. On said day, Van Osdell, due to the pressure and the fact that Johnson had sold the live stock, transferred this Johnson note to the Ready estate, and paid to the bank, out of the funds of the Ready estate, the sum of $1543.74, in cash, which included principal and accrued interest. However, the Johnson note and chattel mortgage were spoliated and altered by drawing lines through the payee's name, and by inserting in lieu thereof, as payee, the John A. Ready Estate. Later on, however, this note was returned to the bank in what is known as the Decker transaction, later summarized, without giving to the Ready estate anything of value therefor, and Van Osdell transferred it to the Greenfield Cemetery Association, of which he was treasurer, and took from the funds of the association, for the benefit of the bank, an amount equal to the face value of the note.

September 10, 1919, one Decker was indebted to the Dade County Bank in the sum of about $15,000, partly secured and partly unsecured. Decker owned a farm of slightly more than five hundred acres, situated in Dade and Cedar counties. In addition to Decker's indebtedness to the bank, the Ready estate held a mortgage on a portion of the farm to secure his $4,000 note. On other portions of the farm were three mortgages, two of which aggregated $3173, but the amount of the other was not shown. Decker owed two years' taxes on the Cedar County land, and three years' taxes on the Dade County land. Decker was not only behind on his interest as to these loans, but two years' interest on his indebtedness to the Dade County Bank had accumulated. His indebtedness to the bank was constantly increasing. On account of his financial condition and his indebtedness to the bank, its president and directors, as well as the State Banking Department, seriously objected to a continuation of these loans. With this situation obtaining, Van Osdell, as cashier of the bank, called Decker in and had him execute a note for $15,000 to one Grether, assistant cashier of the bank, secured by a deed of trust on the farm, together with a forty-acre tract belonging to Mrs. Decker, a part of the same farm, subject to the encumbrances noted above. Van Osdell forged Grether's indorsement to the note, without knowledge of Grether, and placed this $15,000 note and deed of trust among the assets of the Ready estate, and in lieu thereof took from the Ready estate solvent notes of the value of $13,242.26, secured by deeds of trust (except the Johnson note for $1605), and $1757.79 in cash, and delivered these notes and cash to the Dade County Bank, and surrendered to Decker notes held by the bank of the face value of $15,000. A prior deed of trust on a portion of the Decker farm was later foreclosed, and Van Osdell redeemed it for $1410.51, which he raised by giving a note of the Ready estate to the Dade County Bank, forging Harrison's name thereto as trustee. Van Osdell took title to this portion in his name by quitclaim deed. The deed of trust on the Decker farm was foreclosed by Van Osdell, who took title in his name, subject, however, to the prior deeds of trust. Only about one hundred and fifty acres of the five hundred-acre farm was fit for cultivation; and the remainder of the farm was hilly and in brush, but it was capable of being used for pasture. At the time plaintiff was appointed trustee, the improvements were in a bad state of repair, the fences were down and the tillable land had washed. The value of the farm then did not equal the encumbrances on it.

The will of John A. Ready provided, in substance, that the trustees were to continue all loans upon real estate made by Ready in his lifetime, so long as the interest was promptly paid, and that all moneys coming to the trust estate be reloaned on real estate, or in-

vested in real estate security in Dade County, Missouri, preference being given to loans on farms on a very conservative basis, not exceeding one-half the value thereof.

The Dade County Bank failed on January 31, 1924, and was taken charge of by the Finance Commissioner. Thereafter, the Bank of Greenfield, hereinafter called defendant, was organized. The Dade County Bank and defendant, on June 30, 1924, entered into a contract, which was witnessed by a State bank examiner. The material portions of the contract provided, in substance, that, in consideration of defendant's assumption and agreement to pay all of its liabilities, except capital stock and surplus, the Dade County Bank sold to defendant all its assets, except the notes described in "Schedule A," aggregating $91,789.17, attached and made a part of the contract. The assets sold were to be shown by the books of the Dade County Bank at the close of business on June 28, 1924. The Dade County Bank guaranteed that its books showed the true condition of its assets and liabilities, and that all accounts, books, balances and other items of both assets and liabilities of said Dade County Bank, as shown by the books of said bank at the close of business on June 28, 1924, and taken over under the terms and conditions of this contract, are correct. Errors and discrepancies either way were to inure to the benefit of the respective parties, and reimbursement and payment were provided. The aggregate of the face value of the assets and notes transferred by the Dade County Bank to defendant totaled $93,321.33.

The evidence for defendant tends to show that, if defendant, its officers and negotiators of the contract, had known or contemplated that other liabilities than those as shown by the books of the Dade County Bank on June 28, 1924, were in force against it, the defendant would not have entered into or executed the contract; that it was understood by the parties to the contract that defendant assumed only such indebtedness as was shown by the books of the Dade County Bank at the close of business on June 28, 1924, and that the claims sued on were not shown on the books of said bank as liabilities.

Plaintiff was appointed successor trustee of the Ready estate in November, 1923. This suit was filed in the spring of 1925, returnable to the June term of the Circuit Court of Dade County, and tried at the May term, 1926, in the Lawrence County Circuit Court on change of venue. At the time the contract was executed between the Dade County Bank and defendant, the former was in the hands of the Finance Commissioner and his representatives participated in the negotiations and were active in consummating the contract and approved it. Prior to the institution of this suit, the former trustees of the Ready estate, Harrison and Van Osdell, filed a final settlement

of their accounts as trustees of Ready, to which plaintiff filed exceptions, and a trial on the issues raised resulted in a judgment against Harrison and Van Osdell in the sum of $23,652.23. Thereafter, plaintiff instituted in the Circuit Court of Dade County two actions against the bondsmen of Harrison and Van Osdell, respectively, in which it was sought to recover from them the judgment for $23,652.23, entered against Harrison and Van Osdell on the exceptions to their final settlement. Other facts, relating to the respective issues, will be recited in the opinion.

I. At the threshold, pursuant to a general entry of appearance and a prayer that he be made a party defendant, we are met with a motion of the Finance Commissioner of Missouri that this case be stricken from the docket and dismissed. According to an affidavit filed by the commissioner with the motion, he took charge of the assets of the defendant and posted a notice on the front door of the bank on January 12, 1929. The record in this cause shows that plaintiff filed his action in the Circuit Court of Dade County returnable to the June term, 1925, and, on change of venue, the cause was heard on May 18 and 19, 1926, in the Circuit Court of Lawrence County, where judgment was rendered for defendant bank. On June 2, 1926, plaintiff was allowed an appeal to this court.

The motion of the Finance Commissioner is based on Section 11,700, Revised Statutes 1919, as amended by Laws 1927, page 212. The pertinent portion (Subsec. 3) reads:

"Whenever any corporation or private banker subject to the provisions of this chapter so desires, it or he may place its or his affairs and assets under the control of the bank commissioner by posting a notice on its front door as follows: 'This bank (or trust company) is in the hands of the bank commissioner.' The posting of this notice or of a notice by the bank commissioner that he has taken possession of any such corporation or private bank shall be sufficient to place all its assets and property, of whatever nature, in the possession of the bank commissioner, and shall operate as a bar to any proceedings whatever whether in law or in equity, against any incorporated bank, private bank, or trust company, or its or their assets, and if any such action is begun, then all such proceedings shall be summarily dismissed and for naught held, upon the certificate of the bank commissioner being filed in such cause, showing that he has taken possession of the assets of such bank, banker, or trust company, and any court in which such proceedings are pending shall have no power, authority, or jurisdiction to proceed further in any such cause."

It will be noted from a summary of the record herein that suit was filed, judgment was rendered and entered for defendant, and plaintiff allowed an appeal to this court prior to the taking charge of the affairs and assets of defendant bank by the Finance Commissioner. Pursuant to the premises thus developed, he moves that this case be stricken from the docket and dismissed. No doubt can obtain but that at the time plaintiff filed suit in the circuit court, that court had jurisdiction of the corporate person of the Bank of Greenfield, as well as jurisdiction of the subject-matter. It is the general rule that, where a court rightfully acquires jurisdiction of a cause, it has the right to retain it and decide. [Morgan v. Morgan, 2 Wheat. 290; In re Chatwood, 165 U. S. 443, l. c. 460; State ex rel. v. Holtcamp, 266 Mo. 347, 181 S. W. 1007.] If the jurisdiction of the circuit court and the jurisdiction of this court is to be ousted, it results from the occurrence of a subsequent event, over which plaintiff had no control; and jurisdiction, once acquired, is not to be defeated by subsequent events. [15 C. J. 822, 823, 824.] This court has only appellate jurisdiction. To strike the case from the docket and dismiss it would leave the judgment of the circuit court unimpeached and unimpeachable, and thus deprive plaintiff of the right to have the question of error in the court below determined. The motion to strike this case from the docket and dismiss it is overruled.

II. The trial court gave an instruction which declared the law to be that notice or knowledge of Van Osdell as cashier of the Dade County Bank did not constitute notice or knowledge to said bank. Notwithstanding the trial court determined that plaintiff did not have a cause of action, we think, in view of the instruction mentioned, that the cause was decided upon an incorrect theory. The evidence develops that Van Osdell, in his dealing as cashier of the Dade County Bank with the Ready estate, was the sole representative of said bank, as well as the trustee and sole representative of the Ready estate. Morover, Van Osdell received no direct benefit, for his acts and his dealings as representative of the bank with the Ready estate were in behalf of the bank and inured to its benefit and use. In other words, it was the Dade County Bank, not Van Osdell in his personal capacity, although he officiated as representative of said bank, that executed and consummated the contract with the Ready estate. Manifestly the evidence tends to develop, for he was acting as the sole representative of the Dade County Bank in these particular transactions, that the knowledge of Van Osdell was the knowledge of said bank. The facts herein, in view of the development that Van Osdell's acts* were

directly in behalf of the bank and not directly in his own interest, establish a case, if anything, of greater cogency than do the facts in Bartlett v. McCallister, 316 Mo. 129, 289 S. W. 814. Manifestly, then, the rule, enunciated in the Bartlett case and supported by the weight of authority, to-wit, "that the knowledge of the officer is knowledge of the corporation, although he is dealing with such corporation in his own interest, if such officer is at the same time the managing officer of the corporation, and acts as the sole representative of the corporation in the particular transaction," embraces and is relevant to the facts developed herein. [Merchants' Nat. Bank v. Lovitt, 114 Mo. 519, 21 S. W. 825.] The instruction given constituted error.

III. The will of Ready, which creates the trust estate of which Van Osdell was the testamentary trustee, provides, in substance, that the trustees were to continue all loans upon real estate made by Ready in his lifetime, so long as the interest was promptly paid, and that all money coming to the trust estate be reloaned on real estate or invested in real estate security in Dade County, Missouri, preference being given to loans on farms on a conservative basis, not exceeding one-half the value thereof.

We think it is evident than Van Osdell violated his trust in loaning the money of the trust estate in contravention of the terms of the will, and that the Dade County Bank, through the knowledge of Van Osdell, its cashier and sole representative in the transactions, was charged with notice of the trust violations. Van Osdell, acting in the transaction for both the bank and the Ready estate, exchanged a note of doubtful value, secured by a chattel mortgage, owned by the bank, for solvent notes, secured by first deed of trust, owned by the Ready estate. He also paid to the bank a note for $2500, and an overdraft of $500, of an electric company out of the funds of the Ready estate, and delivered to said estate the unsecured note of the electric company, which was then insolvent and the notes practically worthless. In addition, Van Osdell took solvent secured notes and cash owned by the Ready estate, of the value of $15,000, and delivered them to the bank, which used them to discharge an indebtedness of one Decker to the bank, returning to Decker his notes marked paid. In lieu of the appropriated notes and cash, the bank, through Van Osdell, had Decker execute notes for $15,000, secured by a deed of trust on a five-hundred-acre farm, partly in Dade and partly in Cedar counties, which farm was subject to first deeds of trust. The bank knew that the notes of Decker, even though secured by a deed of trust on the farm, were of doubtful value. These facts develop

violations of his trust by Van Osdell and knowledge on the part of the bank, for whose benefit Van Osdell violated the trust, that he had violated it. It follows that the bank wrongfully appropriated the property of an estate and knowingly permitted trust funds to be unlawfully diverted from their trust purpose. Moreover, as the notes delivered to the Ready estate were of doubtful value and probably worthless, the bank, in appropriating the estate's property, obtained same without adequate consideration at least, and, as the bank was cognizant of the trust breach, it became a participant in the breaching of the trust and a trustee *ex maleficio.* It is manifest that the property of said estate appropriated by the bank became a trust fund impressed with a trust in favor of the Ready estate. [Bartlett v. McCallister, supra.] The assets of the Dade County Bank were thus impressed with a trust on coming into the hands of defendant, irrespective of the contract between the liquidating bank and defendant (which contract was admissible to show that defendant acquired the assets of the Dade County Bank), for plaintiff was not a party to the agreement and was not bound thereby. The evidence prima-facie shows that the property of the Ready estate went into and augmented the assets of the Dade County Bank. [State v. Page Bank, 14 S. W. (2d) 597.]

IV. It is true that the present action is one at law on the contract. However, all the essential averments of a suit in equity to impress a trust on the funds of the Dade County Bank taken over by defendant are present, save that the prayer asks damages at law instead of relief in equity. An amendment to the petition praying the impressment of a trust on the funds taken over by defendant cannot be said to change the cause of action. Where a party, under the evidence, has a cause of action, and his petition states a theory upon which he cannot recover, or cannot obtain adequate relief, this court has discretion in the matter, and may remand the cause to permit the petition to be amended, and a retrial of the cause in accordance with principles enunciated. The evidence develops prima-facie that plaintiff is entitled to maintain a suit to impress a trust, and the cause is remanded to permit the petition to be amended, if plaintiff is so advised, but, upon a retrial, the evidence stated herein is not to be taken as true, but the issues must be tried on the evidence to be adduced. [Haseltine v. Smith, 154 Mo. 404, 55 S. W. 633.]

V. In disposing of this cause, however, it is necessary to discuss questions raised by defendant. The first position is that plaintiff

1012

is estopped. This is based on the negligent conduct of plaintiff and laches in asserting the claim. The evidence develops that the Dade County Bank failed on January 31, 1924. On February 8, 1924, plaintiff wrote to the bank examiner in charge of the Dade County Bank that he could not certify that he had no other claims against said bank; that the estate had other claims which will be presented in due course. On the next day, the examiner wrote plaintiff that he was returning to him a claim for $8.67 balance, which he desired him to sign and return, as he wished to complete his certification of the account; and in regard to other claims plaintiff might have, he would be very glad to have him write him regarding same, as he might be of some assistance in the matter. On February 13, 1924, plaintiff wrote the examiner with respect to a claim for a $500 dividend declared by the Dade County Bank and paid to Van Osdell and applied by the bank to the payment of a note made by Van Osdell, as trustee of the Ready estate, to the Dade County Bank; that this constituted a preferred claim, plaintiff was not able to state; that there was a contemplated claim also with respect to the Decker transaction; that plaintiff had not determined whether to demand the loss from Van Osdell's bondsmen, or file a claim against the bank; that he is not in possession of all the facts; that he appreciates the examiner's position, and his reasons for desiring information about the bank as soon as possible, and will keep him advised. In this connection defendant contends that, since plaintiff allowed the statutory period of four months (Sec. 11716, R. S. 1919) to pass without filing a claim with the commissioner, defendant, upon the execution of the contract, could well assume that plaintiff had no claim against the Dade County Bank, and that plaintiff's conduct, in view of the evidence adduced, was tantamount to an estoppel, as he stood mute and permitted defendant to enter into the contract when it was his duty to speak.

The evidence for plaintiff tends to show that he did not know until some time after its execution that defendant had entered into a contract with the Dade County Bank. It is clear that plaintiff's silence was not tantamount to estoppel. Nor do we think that his failure to promptly take action against the commissioner in charge of the Dade County Bank estops him. For one reason, the evidence tends to show that he was not in possession of sufficient information to determine his course of action. We observe nothing in the evidence that tends to show that he purposely or carelessly misled defendant.

Section 11716, Revised Statutes 1919, in substance, provides that, when the commissioner shall have taken possession and shall have determined to liquidate its affairs, he shall notify all persons who may have claims against such corporation, or banker, to present the same to him and make proper proof thereof within four months from the date of said notice, and at a

place specified therein, and shall specify in said notice the last date for presenting said proofs. The notice shall be both by mail to known creditors and by newspaper publication. No evidence was offered that the statutory notice was given. Plaintiff stated that he did not receive a notice and understood that notices were not given. The four months designated in the statute for filing claims is, in effect, a special statute of limitation, and, in order for the statute to run, the requirements must be followed strictly. It is evident that the commissioner did not give the notices, and consequently plaintiff's claims were not barred. The duty rested upon defendant to ascertain that the statute had been complied with, as well as to investigate the existence of claims against the Dade County Bank, before executing the contract. Therefore plaintiff's failure to file a claim with the commissioner did not estop him.

VI. Defendant maintains that plaintiff, in excepting to the trustee's settlement, wherein a judgment on settlement was awarded him for over $23,000, and the filing of actions against the bondsmen of the trustee, made his election of remedies, which is a bar to an action against defendant. The doctrine of election of remedies applies to those remedies only which are inconsistent. We are unable to see anything inconsistent in actions that, in effect, involve the misappropriation and the failure to hand over trust funds, and the pursuit of such trust funds in the hands of the parties receiving them. However, only one full satisfaction may be had. Partial payments in the other suits, if any, are to be credited, if they involve the same funds misappropriated. [Mass. Bond. & Ins. Co. v. Ripley County Bank, 208 Mo. App. 560, 237 S. W. 182; Reynolds v. Union Station Bank, 198 Mo. App. 323, 200 S. W. 711; Steinbach v. Murphy, 143 Mo. App. 537, 128 S. W. 207; Milwaukee Nat. Bank v. City Bank, 103 U. S. 686; 20 C. J. 9, 10; Strong v. Mo. Lincoln Trust Co., 263 S. W. 1038.]

VII. Defendant finally says that, as more than five years elapsed between the misappropriation of the funds of the trust estate by Van Osdell and the present action by plaintiff, the Statute of Limitation has run. It is manifest that the Statute of Limitation does not run in favor of the trustee of an express trust until the trust is repudiated and knowledge of the repudiation is conveyed to the *cestui que trust*. Through the knowledge of Van Osdell as its sole representative, the Dade County Bank knew that Van Osdell breached his trust. It is said in Mechanics' Bank v. Seton, 1 Pet. 299, l. c. 309, ''It is a well-settled rule in equity, that all persons coming into possession of trust property, with notice of the trust, shall be considered trustees, and

bound, with respect to that special property, to the execution of the trust.'' With knowledge that Van Osdell breached his trust, the Dade County Bank became a participant in the breach of trust. The defense of the Statute of Limitation cannot be invoked by a participant in a breach of trust any more than by the trustee himself. [Duckett v. Nat. Mechanics' Bank, 86 Md. 400, 38 Atl. 983, 63 Am. St. Rep. 513, 39 L. R. A. 84; 17 R. C. L. 958-9; 2 Perry on Trusts (17 Ed.) pars. 828, 832, 840, 859, 861; Case v. Goodman, 250 Mo. 112, 156 S. W. 698; Elliott v. Machine Co., 236 Mo. 546, 139 S. W. 356; Case v. Sipes, 280 Mo. 110, 217 S. W. 306.]

VIII. The judgment is reversed and the cause remanded to the circuit court with directions to allow the plaintiff to amend his petition, if he is so advised, and to try the cause anew in conformity to the views herein expressed, or, if plaintiff is not advised to amend his petition, to render judgment for defendant. *Henwood* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.