Submitted on briefs September 8; reversed September 15, 1931

AMERICAN CAN CO. *v.* SCHRAMM ET AL.

(2 P. (2d) 924)

*Teal, Winfree, McCulloch & Schuler,* of Portland, for appellant.

*Hesse & Franciscovich,* of Astoria, for respondents.

RAND, J. This is a suit in equity to enforce a trust upon a fund amounting to $2,652.26, which has come into the possession of defendant as state superintendent of banks through the insolvency of the Astoria Savings Bank, and his taking over of its assets for the purposes of liquidation. The case is here upon appeal from an order sustaining a demurrer to the complaint and dismissing the suit. It appears from the allegations of the complaint that on June 12, 1929, plaintiff shipped by rail to the Point Adams Packing Company, located at Hammond, Oregon, a carload of cans. On the following day plaintiff forwarded the bill of lading issued therefor with a sight draft attached to the Astoria Savings Bank and, by another paper, directed the bank to collect the draft and remit the proceeds in Portland exchange to plaintiff. The draft reads as follows:

"AMERICAN CAN COMPANY
Portland, Ore.

When remitting proceeds Refer to No. 89

June 13, 1929

$2652.26    At sight (with exchange and collection charges)

Pay to the order of Astoria Savings Bank, Astoria, Oregon, Twenty-six hundred fifty-two and 26/100 dollars, value received, and charged to the account of

AMERICAN CAN COMPANY

By (Signed) R. R. Brennan,

To Point Adams Pkg. Co.,                           Cashier.

Form 551

This draft must be paid in cash or its equivalent; the Bank named as payee acting only as agent to collect and remit to the drawer.

Bill of lading attached delivered only on payment hereof.''

Pursuant to these directions, the bank delivered the bill of lading to the packing company and received from the packing company a check for $3,000, drawn by the packing company upon the Hibernia Commercial Savings Bank of Portland, and the goods were delivered to the packing company. The check covered the purchase price of the goods, amounting to $2,652.26, and other small amounts owing by the packing company to plaintiff. The Astoria bank sent the check to the Bank of California for collection and, upon payment of the check, the Bank of California deposited the amount thereof in its own bank to the credit of the Astoria Savings Bank.

On June 15, 1929, the Astoria Savings Bank issued a draft upon the Bank of California payable to the order of plaintiff for said amount which draft plaintiff received on June 17th and on the following day deposited it for collection with the First National Bank of Portland. However, at the close of banking hours on June 17th, 1929, the Astoria bank had become insolvent and had closed its doors and all its assets were taken over by defendant as the state superintendent of banks for purposes of liquidation and when the draft last referred to was presented to the Bank of California for payment it was refused because of the insolvency of the Astoria bank. Subsequently, plaintiff presented to defendant its claim for the moneys collected from the packing company, claiming that they were held by the Astoria bank as trust funds, but defendant, although allowing the claim as an ordinary

claim, refused to give it any preference or priority over the claims of depositors or other creditors of the bank and refused to treat it as a trust fund.

The complaint alleges all the foregoing facts and also alleges that both the bank and the superintendent of banks were in possession of funds in excess of the amount of plaintiff's claim and that defendant has come into possession of all said funds. The relief prayed for is that the defendant be decreed to be a trustee for plaintiff in said sum of $2,652.26, and that he be directed to pay the same over to plaintiff out of the funds now in his possession and under his control.

■■ In making the collection, the Astoria bank was acting purely as an agent of plaintiff and, upon receipt of the money, it held it in trust for plaintiff and when it mingled it with its own funds the trust attached pro tanto to the funds. *Lane v. First National Bank,* 131 Or. 350 (270 P. 476, 281 P. 172, 183 P. 17); *Holder v. Western German Bank,* 136 Fed. 90; *Central National Bank v. Insurance Co.,* 104 U. S. 54 (26 L. Ed. 693); *Knatchbull v. Hallett,* 13 Ch. Div. 696; *Kane v. Bloodgood,* 7 Johns. Ch. (N. Y.) 90 (11 Am. Dec. 417); *Spokane & Eastern Trust Co. v. U. S. Steel Products Co.,* 290 Fed. 884. In *Lane v. First National Bank,* supra, the late Mr. Justice McBride quoted with approval an excerpt from the decision of Chancellor Kent in *Kane v. Bloodgood,* supra, as follows:

"Every person who received money to be paid to another, or to be applied to a particular purpose to which he does not apply it, is a trustee, and may be sued either at law for money had and received, or in equity, as a trustee, for a breach of trust."

The collection by Astoria bank of the draft attached to the bill of lading created an obligation upon the part of the bank to make an actual payment of the

money to plaintiff, which obligation could not be discharged without payment being made. The relationship thus created was not that of debtor and creditor but that of a trustee and cestui que trust and that relationship could not be changed by any act of the bank unless consented to by the plaintiff. Plaintiff has never consented to the making of any change in its relationship with the bank. There was an instruction contained in the writing which accompanied the bill of lading and the attached draft for the bank to remit the proceeds to plaintiff in Portland exchange. Instead of purchasing a draft from some other party, the Astoria bank remitted its own draft which was not paid when presented because of the Astoria bank's insolvency. The issuance and remittance of this draft had no more effect in discharging the Astoria bank's obligation than in the case of a debtor who gives his check in payment of his debt, which when presented is not paid for want of funds. As said in *Holder v. Western German Bank,* supra:

"When it sent its own draft as the remittance, it did not operate as a satisfaction of its obligation, unless the draft should be paid, there being no agreement to receive the draft as payment. This would be so in the case of a common debt. And certainly the reasons for the same rule are not less where an agent transmits to his principal his own note or draft to provide means for the satisfaction of a trust obligation on account of funds received for his principal."

Again, as there said:

"If the remittance of the draft were to be regarded as provisional payment, the result would be that, in case the draft should not be paid, the parties would be remitted to their former position."

■ Here, under the allegations of the complaint, the Astoria bank received the proceeds collected from the

packing company and these proceeds were deposited to its credit in the Bank of California. This augmented the funds of the Astoria bank and when the assets of the bank passed to the defendant as superintendent of banks he took it subject to the trust and must account for it to plaintiff for he occupies no better position than the bank would occupy were it not insolvent.

It is suggested by defendant that, under the provisions of section 22-2001, Oregon Code 1930, the transaction made plaintiff a mere depositor of the Astoria bank. This, as we have shown, could not be true even if the statute was intended to have that effect. The trust was a part of plaintiff's security. Without its consent, the legislature would have no power to deprive it of that security. It would be a taking of property without due process of law. But the section referred to contains no language indicating such intention. After defining what persons shall be regarded as depositors of an insolvent bank, it contains a proviso excepting from its operation funds held in trust. The exception is in these words:

"*  *  * Except that this provision shall not be construed to apply to any claims or demands involving funds held in trust by any such bank or trust company where a preference to such trust funds may be established by good and sufficient evidence to the satisfaction of the superintendent of banks and the circuit court having jurisdiction within the county where such bank or trust company may be located."

This proviso or exception, however, defines a transaction similar to that discussed here and shows that the legislature had no intention, in a transaction of this character, to deprive any claimant of his right to enforce a trust as against the funds of an insolvent bank. It is also contended by defendant that the pro-

viso quoted above was intended to provide an exclusive remedy for the recovery of trust funds when the funds of an insolvent bank had passed into the hands of the superintendent of banks. Before such a construction could be placed upon a statute, it must be clear from the language of the statute itself that the statute was intended to provide an exclusive remedy and to deprive a claimant of any other remedy. The language of the statute indicates no such intention. 1 C. J., section 101, pp. 988, 989.

For the reasons stated, the complaint stated a good cause of suit and the demurrer to the complaint should have been overruled. The cause will be remanded with directions to overrule the demurrer, and it is so ordered.