Argued March 17; affirmed May 31, 1932

IN RE ASTORIA SAVINGS BANK

SVENSON *v.* SCHRAMM, STATE SUPERINTENDENT OF
BANKS

(11 P. (2d) 1062)

*Elton Watkins* and *Wm. P. Lord,* both of Portland (Johnston Wilson and Lord & Moulton, all of Portland, on the brief), for appellant.

*Frank C. Hesse,* of Astoria (Hesse & Franciscovich, of Astoria, on the brief), for respondent.

BELT, J. This is an appeal from a decree of the circuit court affirming the decision of the state superintendent of banks denying the petition of C. H. Svenson and others for preference in the distribution of the assets of the Astoria Savings Bank. Svenson, to whom numerous claims of depositors were assigned, alleges in substance that on and prior to the 16th day of June, 1929, the Astoria Savings Bank held out to the public and represented to him and his assignors in particular that it operated and maintained a savings account department and that such accounts were kept separate and distinct from its commercial accounts; that, in reliance upon such representations and upon the corporate name of the bank wherein the word "savings" was used, he was influenced to deposit therein the sum of $9,026.40 as a savings account; and that, in truth and in fact, the bank did not keep such funds separate, but commingled them with its commercial account funds.

Claimants ask that the court impress a trust as a prior lien upon all of the assets of the savings department and that the superintendent of banks be estopped to assert that the bank was not maintaining and operating a savings account department. The defendant bank superintendent, as liquidating agent, held that the bank at the time of such deposits did not maintain a savings account department and that such depositors must share in the distribution of the bank's assets upon the same footing as commercial depositors. There is no controversy as to the amount due petitioner and

the other claimants. On the merits, the vital question is whether they are entitled to preference as savings account depositors.

Respondent, superintendent of banks, contends that the circuit court had no authority to review his decision rejecting the claims of preference, for the reason that claimants did not comply with the statutory procedure in reference to claims against insolvent banks. The Astoria Savings Bank was taken over by the bank superintendent for liquidation on June 18, 1929. Within the time fixed in the published notices, viz, October 25, 1929, the preferred claims were filed with the superintendent of banks. On November 22, 1929, the superintendent allowed the general claims for the amount due on deposits, but denied any right of preference as savings account depositors. Nothing further was done by claimants until June, 1930, when the superintendent was served with a petition for preference. The sheriff's return of service, together with a copy of the petition, was filed in the circuit court on July 3, 1930. The superintendent, on July 7, 1930, again denied claimants any right of preference. The matter came on for hearing in the circuit court on the 27th of October, 1930, and, on the 16th of February, 1931, the court ordered and adjudged that the petition for preference be denied.

The questions of procedure presented involve a construction of sections 22-2009 and 22-2011, Oregon Code 1930. Section 22-2009 provides:

"All claims of any kind or nature must be first filed with the superintendent of banks. The superintendent of banks shall cause notice to be given by advertisement, in such newspaper as he may direct, weekly for three consecutive months, calling on all persons who may have claims against such bank or

trust company to present the same to the superintendent of banks and to make legal proof thereof at a place and within a time not earlier than the last day of publication to be therein specified. The superintendent of banks shall mail a similar notice to all persons whose names appear as creditors upon the books of the bank or trust company. If the superintendent of banks doubts the justice and validity of any claim, he may reject the same and serve notice of such rejection upon the claimants, either by mail or personally, and an affidavit of the service of such notice, which shall be prima facie evidence thereof, shall be filed in his office. An action upon a claim so rejected must be brought within three months after such service and notice thereof must be served upon the superintendent of banks. Any claim of preference or prior lien on any of the assets of such bank or trust company over the claims of other depositors or deposits must be filed with the superintendent of banks before the expiration of the time fixed in the notice to creditors, and if not so filed shall be forever barred and shall not be approved or allowed as a preferred claim. * * *.''

Section 22-2010 relates to objections made by other parties to claims not rejected by the superintendent of banks. Section 22-2011 provides:

''Any petition relating to an insolvent bank, other than a petition by the superintendent of banks, must be filed with the court and the superintendent of banks. The superintendent of banks shall, within a reasonable time thereafter, grant or refuse such petition and notify the petitioner in writing. Any such petitioner who is dissatisfied with the decision of the superintendent of banks may, within 30 days thereafter, present said petition, together with the decision of the said superintendent of banks, to the circuit court of the judicial district in which the office of such bank or trust company was located. The said court shall fix a date for the hearing of any such petition, giving reasonable notice thereof to the petitioner and to the superintendent of banks,

and shall determine said matter upon the evidence produced by all concerned, and the burden of proof in such proceedings shall be upon the petitioner.''

It is clear from section 22-2009 that ''all claims of any kind or nature'' must first be filed with the superintendent of banks and that if any claim of preference is not so filed before the expiration of the time fixed in the notice to creditors it shall be forever barred as a preferred claim. The claimants unquestionably complied with these provisions of the statute. It is to be observed that the legislature apparently made a distinction between general claims and preferred claims, as in the former class of claims it is provided that an *action* upon a claim so rejected must be brought within three months after service of notice of rejection. As to equitable claims for preference, a summary statutory procedure is provided.

The sections above mentioned are loosely drawn and it is not surprising that counsel, the lower court and this court have been much perplexed as to what procedure the legislature had in mind. The construction which we adopt is one which it is believed will be reasonable and will tend to make efficacious the law in the liquidation of insolvent banks. At least, such construction will not permit claimants to sleep on their rights and bring on interminable delay in the distribution of the assets of a bank.

The law does not contemplate the doing of a vain and idle thing. Since the bank superintendent rejected the claim or petition for preference in October, 1929, it was a useless and repetitious act for him to again reject the petition filed in June, 1930. We make no distinction between a ''claim of preference'' and a ''petition for preference.'' When the superintendent

rejected the claim or petition for preference, claimants, within 30 days from date thereof, should have (1) filed the petition for preference and the decision of the superintendent rejecting the same with the clerk of the circuit court, and (2) presented such petition and decision to the circuit court for determination.

When the legislature required that the petition, together with the decision of the superintendent of banks, be "presented" to the circuit court for determination, we believe it contemplated that some motion or petition be filed requesting the court to set the matter for hearing and that this must be done within the mandatory time of 30 days from date of the decision of the superintendent of banks as provided in section 22-2011, Oregon Code 1930. If it is not presented to the court within such time, the claimant waives the claim of preference and the court has no jurisdiction to determine the same. We think it was not the intention of the legislature that, after the bank superintendent had rejected a claim of preference, the claimant could, without limitation as to time, "present" the question of preference to the circuit court for decision. The interest of all depositors in a defunct banking institution demands that its assets be liquidated and distributed expeditiously. It is believed that the procedure stated—which we think expresses the legislative intent—will, without prejudice to the rights of depositors, enable the bank superintendent to liquidate and distribute the assets of an insolvent bank with reasonable expedition. The failure of the claimants to comply with the statute as thus construed amounts to a waiver of their claim of preference.

■ On the merits, and aside from any question of procedure, the bank superintendent was right in denying the claim of appellant to be considered as a savings

account depositor and a preferred creditor. At the time these deposits were made and ever since the banking act of 1911 (Chapter 171, G. L. Or. 1911) requiring, among other things, the segregation of securities and assets, the bank did not maintain or operate a savings account department. It did not qualify under the banking act and the reports made to the bank superintendent and published in local newspapers of general circulation at Astoria plainly disclose that no savings department was maintained. There were no separate book accounts and the funds of the bank were commingled. After the bank ceased to carry savings accounts, it, upon direction of the superintendent, removed the rules and regulations from pass books and thereafter accepted what it designated as "interest bearing accounts." These accounts were payable upon demand and, in the event the deposits were withdrawn, interest was forfeited. True, some of the officers and employees of the bank referred to these accounts as savings accounts, but we think it was for the purpose of distinguishing them from commercial accounts. At any rate, whatever designation such employees or officers gave to these accounts, the legal status of the bank remained unchanged. If the bank had been operating a savings account department in accordance with the statute it would, among other things, have been required to keep separate books and accounts as to such deposits, keep all savings funds separate from commercial account funds, and invest savings funds in certain approved securities to be marked "savings department." None of these statutory regulations were observed. The bank was not maintaining a savings account department.

■ It is urged, however, that the bank held out to the public and to these claimants that it was operating a

savings account department and that, by reason thereof, a fraud was perpetrated. There is some evidence tending to support this contention, but it is not believed that any relief can be granted in this proceeding. Assuming such to be true, it is not ground for estopping the bank superintendent from denying the right of preference allowed savings account depositors. The superintendent also represents the commercial depositors in this bank. Why should they not be heard? They were innocent of any wrong but will be materially affected if claimants' petition for preference is allowed. If it is true that certain bank officials exacted notices of withdrawal on these "interest bearing accounts" as if they were in truth savings accounts, a wrong was committed for which such claimants have an adequate remedy. As heretofore stated, the "interest bearing account" funds and the commercial account funds were commingled. There are no securities or assets of a separate and distinct savings account department. No specific securities of any kind were ever set aside or pledged for the repayment of the "interest bearing accounts." Yet this court is asked to impress a prior lien or trust upon assets which cannot be traced or identified. It can not be done.

The decree of the circuit court is affirmed.