Argued October 15; affirmed November 16, 1937

# HARRISBURG NATIONAL BANK ET AL. *v.* SKINNER ET AL.

## (73 P. (2d) 363)

570

*Mark V. Weatherford*, of Albany (Mark V. Weatherford and J. K. Weatherford, Jr., both of Albany, on the brief), for appellants.

*Sidney Graham*, of Portland (Chas. A. Hardy, of Eugene, and Sidney Graham, of Portland, on the brief), for respondents.

■ LUSK, J. In the view that we take of the legal question arising under the affirmative allegations of the answer, the substance of which has been stated, we find it unnecessary to determine whether or not the contract or the conduct of the defendant bank under the

contract created a trust relationship between the two banks with respect to moneys received by the Junction City Bank in excess of the deposit liability and not accounted for to the plaintiffs. The undisputed testimony established that the plaintiffs have never filed a claim with the superintendent of banks and have not, in any other respect, brought themselves within the exclusive provisions of the 1931 statute governing the liquidation of insolvent banks and the proof and allowance or rejection of claims against such banks and the bringing of suit on such claims. In our opinion, these provisions are controlling, even though it appeared that the money claimed by the plaintiffs is held in trust for them by the state superintendent of banks. For the purpose of this decision, we may assume that that is the case.

The statute in effect at the time the Junction City Bank was taken over by the state superintendent of banks was section 29, chapter 278, Oregon Laws 1931, amending section 22-2009, Oregon Code 1930, and read in part as follows:

"The superintendent of banks shall cause notice to be given by advertisement, in such newspaper as he may direct, weekly for three consecutive months, calling on all persons who may have claims against such bank or trust company to present the same to the superintendent of banks and to make legal proof thereof at a designated place and within 90 days from the first day of publication. The superintendent of banks shall mail a similar notice to all persons whose names appear as creditors upon the books of the bank or trust company. All claims of any kind or nature must be filed with the superintendent of banks, and if a claimant asserts a preference, he shall file in addition to his said verified claim a verified petition for preference which must state the grounds for preference. Any such petition for preference or prior lien on any of the assets of such bank or

trust company over the claims of other depositors or creditors must be filed with the superintendent of banks and the circuit court for the judicial district in which the office of such bank or trust company was located before the expiration of the time fixed in the notice to creditors, and if not so filed shall be forever barred and shall not be approved or allowed as a preferred claim.

"If the superintendent of banks doubts the justice and validity of any claim or petition for preference, he may reject the same within a reasonable time thereafter and serve notice of such rejection upon the claimants, either by mail or personally, and an affidavit of the service of such notice, which shall be prima facie evidence thereof, shall be filed in his office.

"An action upon a legal claim so rejected must be brought in the circuit court for the judicial district in which the office of such bank or trust company was located within three months after such service and notice of intention to commence such action must be served 10 days prior to the commencement thereof upon the superintendent of banks.

"Any petitioner who is dissatisfied with the decision of the superintendent of banks in rejecting a petition for preference must, within 30 days thereafter, present said petition, together with the decision of the superintendent of banks, to such circuit court for review, whereupon such circuit court shall fix a date for the hearing of any such petition, giving reasonable notice thereof to the petitioner and to the superintendent of banks, and shall determine said matter upon the evidence produced by all concerned, and the burden of proof in such proceeding shall be upon the petitioner. An appeal from the decision of such circuit court to the supreme court may be taken by either party as from any other judgment or decree of such circuit court.

"The summary procedure of filing of claims and petitions for preference, and of the determination thereof by the superintendent of banks, and of the commencement of actions thereof, and of review on petitions for preference by the said circuit court, and of appeals

therefrom to the supreme court, shall be exclusive of all other legal or equitable remedies, either by action or suit, which previously hereto prevailed under the common law."

■ The legislature has thus provided the remedies which may be pursued by persons having claims against an insolvent bank, which has passed into the hands of the state superintendent of banks, and has, in terms, made those remedies exclusive, evidently for the purpose of furthering the expeditious liquidation and distribution of the assets of the defunct institution, which this court in the case of *Svenson v. Schramm*, 139 Or. 573, 578 (11 P. (2d) 1062), said that the interest of the depositors demands. Whatever the nature of the claim, it must be verified and filed with the superintendent of banks within the prescribed time. If it be a claim for preference, the ground of preference must be stated and the claim must be filed with the circuit court as well as with the superintendent of banks, and if not so filed it is forever barred as a preferred claim. If a claim is rejected, action must be commenced thereon in the proper circuit court within three months after service of notice of rejection on the claimant, and 10 days' notice of intention to commence such action must be given to the superintendent of banks. If the claimant is dissatisfied with the superintendent's decision on a petition for preference, he may obtain a review of such decision by presenting his petition to the circuit court.

It is the position of the plaintiffs, however, that these provisions have no application to them; that they are not creditors seeking a preference, but owners of money in the hands of another, which they are attempting to reclaim, and they cite the cases of *Beck v. Junction City State Bank*, 149 Or. 352 (37 (2d) 1089, 40 P.

(2d) 1017), and *American Can Company v. Schramm*, 137 Or. 328 (2 P. (2d) 924), in support of this position. These decisions are not in point. The Beck case was brought to recover specific bonds, which had been left in the bank for safe keeping, and the court held that the summary proceeding of the statute ''was not intended to apply to such claims as plaintiff presented in his complaint''. The American Can Company case was brought before the 1931 enactment, and the decision that the plaintiff in seeking to establish a trust in assets of an insolvent bank could proceed by suit in equity without regard to the statute was based on the omission from the law as it then stood (section 22-2009, Oregon Code 1930), of any language indicating that the legislature intended to make the statutory remedies exclusive. The plaintiff, in that case, moreover, had filed its claim with the state superintendent of banks. The question here presented is whether section 29 of the 1931 act applies to a case where the alleged trust fund has been so mingled with the bank's own money that it has lost its identity and cannot be traced as a specific fund. It has not been questioned, and certainly cannot be, that it is within the power of the legislature to provide an exclusive procedure for the establishment of a claim of this character, and we think that the legislature has done so.

The identical question was presented and disposed of adversely to the contention of plaintiffs in this case in the well-reasoned opinion of the Missouri supreme court in *Commerce Trust Company v. Farmer's Exchange Bank of Gallatin*, 332 Mo. 979 (61 S. W. (2d) 928, 89 A. L. R. 373). The plaintiff there was claiming the proceeds of a collection made by the insolvent bank as a trust fund. It had not filed its claim with the commissioner of finance, nor filed the suit within the time

prescribed by the statute governing the liquidation of insolvent banks. It contended that the statute did not apply to a claim of that character, which is precisely the contention of the plaintiffs here. The court first called attention to the doctrine in Missouri, which is also the law in Oregon (*School District 62 v. Schramm,* 142 Or. 296 (20 P. (2d) 241), that where trust funds are commingled with the bank's own funds, if it be made to appear that the assets of the failed bank coming into the hands of the liquidating commissioner have been augmented by the trust fund, all the assets of the bank in the commissioner's hands may be impressed with the trust, and to that extent the cestui que trust will be allowed a preference over general creditors and entitled to payment out of the general assets of the institution in the commissioner's hands. The court then said:

"It follows that even though the bank did not have title to the trust fund, and such fund is, therefore, not to be considered as an asset of the bank in the hands of the liquidating commissioner, who could take no better title than the bank had, still the allowance and payment of the cestui que trust's claim necessarily affect, and are drawn into, the settlement and winding up of the bank's affairs and the distribution of its assets."

In interpreting statutory provisions similar to those which we are now considering, the court declared:

"The statute relative to the department of finance and to banking institutions was designed to and does provide a complete and exclusive scheme for the liquidation of insolvent banks and the distribution of their assets,"

and continued as follows:

"It seems to us clear that these statutory provisions contemplate and were intended to require the prompt presentation and disposition of all claims of whatever

character against an insolvent bank, at least where, as in this and similar cases, the claim is not for possession of specific property, but one in which the claimant seeks to recover, and practically can only recover by an award to be paid out of the assets in the hands of the liquidating commissioner, including those to which the bank had title. Until all such claims are presented and determined, the bank's assets cannot be properly distributed, and its affairs wound up.''

The opinion then proceeds to consider the contention advanced by the plaintiff in that case that the word "creditors" in the statute must be taken as characterizing the kind of claims required to be filed with the commissioner, so as to take out of the purview of the statute a claimant attempting to pursue trust moneys. But it was pointed out that the word "creditor" frequently has been held to mean more than a person to whom money may be owing as a debt, in the strict sense of that term, and that it means, also, one who has a right to require the fulfillment of an obligation or contract, or a person to whom any obligation is due. The court concluded that the word "creditor" was used in the broader sense rather than the restricted sense as meaning the persons "who may have claims against the bank", and that it applied to the plaintiff. The opinion proceeds,

"And as pointed out above, provision is made for the determination by the circuit court of questions of priority, and, where the bank cannot continue in business, for the distribution of its assets, the winding up of its affairs and its dissolution, all within a much shorter time than the limitation period applicable to demands of the nature of that asserted by plaintiff herein, if they are not included in the claims that must be presented to the commissioner. As said by the St. Louis Court of Appeals in Bowersock Mills & Power Co. v. Citizens' Trust Co., supra,

it is to the public interest that the affairs of an insolvent bank be wound up as quickly as possible, and we agree with that court that the provisions of the liquidation statute evince a purpose to compel the presentation of all claims within the time therein prescribed 'so that all claims may be determined with reference to the rights and equities of each and every creditor,' and in order that delay in the settlement of the insolvent bank's affairs, detrimental to the welfare of the community, may be avoided.''

The case of *Dewey v. Commercial State Bank*, 141 Kan. 356 (41 P. (2d) 1006), is a decision to the like effect, based upon similar statutory provisions of the state of Kansas. See, also, *Ogan v. Farmers' and Merchant's Bank of Chillicothe*, (Mo. App.), (90 S. W. (2d) 438); *Bowersock Mills and Power Company v. Citizens Trust Company*, (Mo. App.), (298 S. W. 1049), 7 Am. Jur. 531, § 737.

The Missouri court and the Kansas court have, in our opinion, correctly interpreted and stated the meaning and purpose of statutes of those states, similar to the Oregon statute under consideration, and we believe that little, if anything, could be added to the force of those decisions by further discussion. We hold that it was the intention of the legislature to bring within the scope of section 29, chapter 278, Oregon Laws 1931, claims of the kind involved in this case.

■ The question remains whether plaintiffs have shown a valid excuse for their failure to comply with the statute. It is doubtful whether the superintendent of banks, under any circumstances, has authority to waive the timely filing of claims: *Commerce Trust Company v. Farmer's Exchange Bank*, supra. But assuming that he did have such authority, the plaintiffs have neither pleaded nor proved facts which operate

as a waiver. In their reply they deny that the superintendent mailed any notice to them "as required by law" and it is admitted that no such notice was given. The record discloses, however, that the general notice to creditors was published in accordance with the terms of the statute, the first publication having been made on February 25, 1932, and the last on May 26, 1932. By this notice creditors were required to file their claims on or before the latter date.

The defendant bank passed into the hands of the superintendent on February 11, 1932. At that time the name of the plaintiff bank appeared on the books, not as a creditor but as a debtor in the sum of $1,842.71. On an audit being made it was discovered that owing to failure of the officers and employees of the Junction City Bank to post certain credits received from the sale of assets of the Harrisburg bank, the latter should have appeared on the books as a creditor in the amount of at least $2,542.22, or, if no interest was charged against the Harrisburg bank, then in the amount of $4,212.09, not taking into consideration certain disputed items.

■ The presentation of the claim to the superintendent of banks for approval or rejection is a condition precedent to the creditors rights thereafter to bring any suit thereon, Braver, Liquidation of Financial Institutions, 1220, § 1056; and it has been held by one court that even though the liquidating agent failed to advertise for claims, as required by statute, the creditor was not excused from filing his claim, *Brand v. Conner & McRae*, Tex. Civ. App., 78 S. W. (2d) 712; though in *Mann v. Bank of Greenfield*, 323 Mo. 1000 (20 S. W. (2d) 502, there is a contrary ruling on the same point. In *State v. State Bank of Papillion*, 119 Neb. 519 (229

N. W. 892, 232 N. W. 585), and *Farm & Home Savings and Loan Association v. Howard*, 224 Mo. App. 532 (30 S. W. (2d) 631), it was held that where the claimants did not receive the required notice the statutory period in which to file claims did not run against them, and, it appearing that assets still remained in the hands of the liquidating agent, that they should be permitted to file their claims and share in the distribution.

It is not necessary in this case, however, to determine what would have been the rights of the plaintiffs if the superintendent of banks failed to give them the notice to which they were entitled by law. They were not entitled to notice by mail because their names did not appear on the books of the Junction City Bank as creditors: Section 29, chapter 278, Oregon Laws 1931; *Commerce Trust Company v. Farmer's Exchange Bank*, supra. It is quite true that a statute of this kind must be followed strictly by the liquidating officer: 3 Michie, Banks and Banking, 212, § 154; Braver, Liquidation of Financial Institutions, 1215, § 1049; *Farm & Home Savings and Loan Association v. Howard*, supra. In this case we find no omission of duty on the part of the superintendent of banks. In our opinion he was not required, as from time to time he might discover names of creditors, either by an audit of the books or other means, to give them personal notice by mail. The published notice is evidently for the benefit of persons whose status as creditors could not be discovered by a mere inspection of the books. In this case it required an examination which was not concluded until approximately five weeks after the Junction City Bank closed its doors and extended to a very large number of transactions to develop the true state of the account between the two banks. Meanwhile the time fixed for

filing claims had begun to run. If, then, the plaintiffs were entitled to personal notice they would likewise be entitled to 90 days time from its receipt in which to file their claim. The scheme of the statute does not, we believe, comprehend such a result, but rather a limitation of time for filing claims applicable alike to all creditors. The superintendent of banks did nothing to mislead the plaintiffs. They knew of the liquidation, notified the superintendent in writing on February 19, 1932, of their intention to file a preferred claim for approximately $10,000, and were informed of the credits to which they were entitled but which had not been posted to their ledger account at about the time the auditor employed by the superintendent ascertained the facts. Instead, however, of filing a claim they let the 90-day period go by and on June 29, 1932, commenced an action on the same claim which is asserted here against the directors of the Junction City Bank and nearly three years later, with that action still pending and undisposed of, began this suit. To this day they have filed no verified claim nor petition for preference and their claim for preference, under the plain language of the statute, is therefore "forever barred". See in this connection *Svenson v. Schramm*, supra.

By section 30, chapter 278, Oregon Laws 1931, it is expressly provided: "No moneys shall be paid out of the assets of any insolvent bank in the hands of the superintendent of banks for liquidation, unless an itemized claim duly verified by the oath of the claimant or petitioner and in a form prescribed by the superintendent of banks shall first be filed with the superintendent of banks." In view of this and other provisions of the statute to which attention has been called the court could not sanction the course which the plaintiffs

have chosen without ignoring the plain legislative mandate.

■ It does not necessarily follow, however, that the plaintiffs are entirely without recourse. The provision of the statute expressly barring preferred claims not filed within time has no application to general claims, and section 29 of the act contains this language:

"Depositors' claims presented and allowed after the expiration of the time fixed in the notice to creditors shall be entitled to be paid the amount of all prior dividends therein, if there be funds sufficient therefor, and share in the distribution of the remaining assets in the hands of the superintendent of banks equitably applicable thereto. For the purpose of facilitating the final closing of the liquidation of such bank or trust company, the circuit court of the judicial district in which the office of such bank or trust company was located may, by order, bar all claims at any time after the expiration of one year from the first publication of notice to creditors."

Thus it was clearly within the legislative contemplation that the superintendent of banks could allow claims of depositors, at least, and possibly of other general creditors, after the expiration of the time fixed in the notice. In other words, the filing of a depositor's claim within the 90-day period is not a condition precedent to recovery, where assets remain applicable to such claim. In this case, the superintendent of banks has in his hands sufficient moneys to discharge the plaintiffs' demand. He has taken the position that the plaintiffs are to be treated as depositors to the extent of the moneys received by the Junction City Bank, in excess of the deposit liability which it assumed; that that was the agreement of the two banks, and the fact that the

Junction City Bank violated the agreement works no change in the plaintiffs' status.

This decision, therefore, will be without prejudice to the right of plaintiffs to present to the superintendent of banks their claim as depositors, provided the circuit court has not heretofore made a valid order barring all claims pursuant to the above quoted provision of the statute.

For the reasons herein given, the decree of the circuit court dismissing the suit is affirmed, none of the parties to recover costs.

RAND, BAILEY and ROSSMAN, JJ., concur.