FARM & HOME SAVINGS & LOAN ASSOCIATION OF MISSOURI, APPEL-
LANT, v. MARTIN L. HOWARD, RECEIVER, S. L. CANTLEY, COM-
MISSIONER OF FINANCE, AND REPUBLIC STATE BANK, RESPONDENT.
—30 S. W. (2d) 631.

Springfield Court of Appeals.   July 29, 1930.

*Ewing, Ewing & Ewing* for appellant.

*Farrington & Curtis* and *Paul W. Barrett* for respondent.

SMITH, J.—This is a suit against the respondents to compel the allowance of the claim of appellant against said bank which had failed. Suit was filed in October, 1928, and amended petition filed January 24, 1929, which amended petition in part is as follows:

534

"Plaintiff further says that at the date said bank failed and was taken over by said bank commissioner and deputy commissioner, this plaintiff had on deposit to its credit in said bank, the amount of one hundred and four and 95/100 ($104.95) dollars; and that plaintiff has filed claim against said bank with defendants and applied to defendants to have claim allowed as a general creditor of said bank; that the said defendants have declined to receive claim or allow it for the reason that defendants allege that said claim was presented more than six months after the failure of said bank.

"Plaintiff says that it had no knowledge of the failure of said bank until on or about the 20th day of October, 1928, and had no knowledge its funds were on deposit in said bank until said date; that no notice of the failure of said bank was ever mailed to plaintiff as provided by law, and that by reason of said failure to give notice to this plaintiff, its claim was not barred by reason of any provision of the laws of this State.

"Wherefore, the premises considered, plaintiff asks the court to allow plaintiff's claim as a general creditor of said bank and to direct defendants to pay said claim to plaintiff as a general creditor of said bank."

Afterwards, on the 3rd day of July, 1929, defendant filed answer to the amended petition, admitting that the Republic State Bank is a banking institution, that the plaintiff is a building and loan association, and that on the 12th day of April, 1928, the bank failed and all its property and affairs were taken in charge by S. L. Cantley, commissioner of finance, and that since said date he has been in charge thereof under and by virtue of the laws of this State relating to insolvent banks. This was followed by a general denial, and the answer contained the following averment:

"Further answering, and as a defense to this action, defendant states that said Republic State Bank closed its doors on the 12th day of April, 1928, as hereinabove set forth; that on said date all its assets were delivered to S. L. Cantley, finance commissioner of the State of Missouri; that thereafter, Martin L. Howard was appointed and designated as special deputy commissioner and went into immediate possession and charge of the affairs of said bank; that on the 10th day of May, 1928, all of the creditors of said Republic State Bank including the plaintiff herein were given notice that the last day for filing claims and presenting proofs would be October 1, 1928; that such notice was directed to the plaintiff through the mails, and that in addition thereto such notice was printed and published in the Republic Monitor, a weekly newspaper printed and published in Republic, Missouri, weekly from the 10th day of May, 1928, to the 27th day of September, 1928; that prior to said 1st day of October, 1928, plaintiff herein failed to present

its claim or make any proof thereof and that no such claim was ever filed prior to the institution of this action.

"Wherefore, defendant says that by reason of the premises the claim of the plaintiff is barred by sections 11716 and 11720, Revised Statutes 1919, of the State of Missouri, which said section the defendant specifically pleads as a bar to any recovery by plaintiff herein."

On July 3, 1929, a hearing was had before the court without a jury, and at the conclusion of the testimony the court announced that its findings would be for the defendants and after motion for new trial was overruled judgment was entered for the defendant, said judgment entry, caption omitted, is as follows:

"Now on this day come the parties, plaintiff and defendant by their respective attorneys, and this cause now coming on to be heard, the said parties announce ready for trial, thereupon a jury waived by consent, this cause is submitted to the court for hearing and the court proceeds to hear the evidence and being sufficiently advised in the premises, the court finds the issues in favor of the defendant.

"It is therefore considered, adjudged and ordered by the court that the plaintiff take nothing by its suit herein against the defendant but that the same be and is hereby dismissed and that the defendant go hence thereof without day and have and recover of and from the plaintiff all costs in this suit laid out and expended for which execution may issue."

After judgment in due time appeal was taken to this court.

The testimony in the case is simple. There is no controversy as to the failure of the bank, and it was admitted the plaintiff had on deposit in the bank at the time of its failure $104.95, S. L. Cantley, commissioner of finance of this State took charge, and Martin L. Howard was appointed and took charge as special deputy commissioner, and caused to be published in a county paper, as required by law, a notice to all persons having claims against said bank to make proof thereof within four months from May 10, 1928, and that the last day for presenting said proofs would be October 1, 1928, and that the plaintiff did not present its claim within the four months nor until after the 20th of October, 1928, and the claim was denied by the commissioner of finance because it was not presented within the time designated for filing claims.

The testimony of the plaintiff was that its principal office was at Nevada, Missouri, and that it didn't know it had a deposit in the bank until the 20th day of October, 1928, the amount having been deposited there by one of its local agents or collectors, and not reported to its office at Nevada, and that no notice was received advising the plaintiff of the bank's failure or of the time within which proofs of claim could be filed, and that lack of knowledge of

the deposit, and lack of notice of the time within which to file proofs of the claim were the only reasons the claim was not filed.

. The questions to be determined by this court are whether or not the testimony on behalf of the defendants was sufficient to show the service of notice through the mails to present claims against the bank, and on whom rested the burden to show that this notice was mailed.

Section 11716, Revised Statutes 1919, providing that the commissioner should notify all persons to present claims within four months, is a special statute of limitation, and in order for the statute to run, the requirements as to giving notice must be followed strictly. [Mann v. Bank of Greenfield, 20 S. W. (2d) 502, 508.] So strictly must the law be complied with that the Kansas City Court of Appeals in the case of Woods v. Cainsville Bank et al., 11 S. W. (2d) 56, in construing the above section of the statute held that the law was not complied with in the publication of notice when the published notice was omitted from the paper one week of the time it was to run, and the court so held although the claimant had actual knowledge that the bank had closed.

The plaintiff requested the court to give three declarations of law. The first was that under the pleadings and the evidence in the case its verdict and findings should be for the plaintiff; the second was that the burden of proof was on the defendant to show that the notice of May 10, 1928, notifying the creditors to present their claims, was placed in an envelope duly addressed to the plaintiff at Nevada, Missouri, and that the envelope was duly stamped and placed in the United States Post Office for transmission to the plaintiff, and third that if the court shall believe and find from the evidence that the notice of May 10th was never received by the plaintiff, then the burden was on defendants to show that said notice was placed in an envelope, properly addressed to plaintiff at Nevada, Missouri, and said envelope was stamped with necessary amount of postage and deposited in the post office for transmission. These three instructions were refused, and it is upon their refusal that complaint is made here.

The court gave a declaration of law to the effect that the plaintiff must prove by the preponderance or greater weight of the evidence that the defendant S. L. Cantley, commissioner of finance of the State of Missouri in charge of said bank failed to give the plaintiff the notice to prove its claim as requested by section 11716, and declared that plaintiff had failed to carry the burden, and the findings were in favor of the defendant.

Where is the burden in this case? The notice was published as requested by the statute, but the statute requires and the courts hold that notice must also be mailed. Was it mailed? Is the burden on the plaintiff to show that it was not mailed, or is it on the defendant to show that it was mailed? The plaintiff pleaded in its

petition that it did not receive the notice, and its uncontradicted testimony was that it did not receive the notice.

We think the allegations in plaintiff's petition that no notice to present claims was mailed to it, is a negative averment, the subject-matter of which lay peculiarly within the knowledge of the defendant, and we think under such circumstances the burden was on the defendants to disprove the negative averment. Our courts have frequently discussed this. In the early case of State to the Use of Lechter et al. v. Schar, 50 Mo. 393, l. c. 394, the court used this language: "The general rule is that he who alleges an affirmative is bound to prove it. But there are some exceptions to this rule. Where the plaintiff grounds his right of action upon a negative allegation, and the proof of the affirmative is not peculiarly within the knowledge and power of the other party, the establishment of this negative is an essential element of the plaintiff's case. Where, however, the subject-matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party." This rule had been approved frequently, and this court in the case of Harper v. Blanton, 274 S. W. 845, at page 846, in an opinion by Cox, P. J., used this language: "The general rule that when a negative allegation is made by one party and the knowledge of the facts in relation thereto is peculiarly within the knowledge of the other party and is not readily accessible to the party making the allegation, the burden is on the party possessing the knowledge to produce all the facts at the trial, is fully recognized in this State. [Schneider v. Maney, 242 Mo. 35, 145 S. W. 823; Swinhart v. St. Louis & S. F. R. Co., 207 Mo. 423, 105 S. W. 1043; State ex rel. Bankers Life Co. v. Reynolds, 277 Mo. 14, 208 S. W. 618; Pauley v. Business Men's Assur. Co. (Mo. App.), 261 S. W. 340."

We can conceive of no plainer case for the following of this rule. Here the statute requires the notice to be mailed, the plaintiff alleged it was not received, the defendant answered and set up the affirmative defense that the notice was mailed. Who possessed the knowledge that it was mailed and upon whom rested the duty to show the mailing? It must be held that the burden to make this showing was upon the one who is required by the statute to mail, and especially so, in this case, since the knowledge of the facts in relation to the mailing is peculiarly within the knowledge of the defendants. We think the court erred in its declaration of law holding that the burden of proof was upon the plaintiff to show that the notices were not mailed, and erred in refusing declarations of law requested by the plaintiff that the burden was upon the defendant to show the mailing after the allegation and the proof that the notice was not received.

Since the burden was on the defendant to show the mailing of the notices, does the testimony in this case show that the defendant had sustained that burden? The ledger account as carried in the bank introduced in evidence and marked "Exhibit C" did not give the address of the plaintiff. Martin L. Howard, the special deputy commissioner testified as follows:

"In addition to the notice published in the newspaper, I caused a notice to be prepared to mail to each creditor. I had notice printed on the letterhead of the bank. The paper marked Exhibit 'B' is the notice which I caused to be prepared and mailed to each creditor of the Republic State Bank. That notice reads exactly as the notice in the newspaper.

"Yes, sir, the books and papers of the bank were all turned over to me. The deposit records in the bank were kept in what is generally termed a ledger sheet, an individual name on each sheet. They were all kept together in one binder, alphabetically arranged in a loose-leaf system. Harold Davis assisted me in getting out the notices; he was formerly assistant cashier of the bank. The notices were gotten out in this manner; in their ledger book binder these individual sheets were arranged in alphabetical form; and I asked Mr. Davis, who had been in the bank for quite a long while—many of these had no addresses on them—to check and mail each individual a notice to the last known address; he was more familiar than we were. I instructed him if he didn't know the address of the depositor, to mail it to Republic, Missouri, but where he did know the address to send it to the address. These notices had been printed; the only thing to do was to address envelopes to each one of the creditors as shown by the records of the bank. The records of the bank disclosed that the Farm & Home was a depositor of the bank. The paper marked Exhibit 'C,' which you handed me, is the ledger sheet for the Farm & Home account; it was in the binder with the other. It is in the same condition now as it was then. I did not address any of the letters to depositors that I recall. I think Mr. Davis addressed all of them. After the envelopes had been addressed before they were mailed, we attempted to check the list as shown by the sheets and verified it by the inventory furnished by the state finance commissioner; we checked that with the envelopes. Mr. Davis and I each took part in the checking. I think he did the addressing of all envelopes. I don't recall how we checked, but we checked together. We went through to see that no names were overlooked.

"Q. Have you any personal knowledge of any envelope being addressed to the Farm & Home? A. I have not.

"Q. But you do know the sheet was there at the time? A. I do. We did not find any discrepance in checking the envelope with the sheets in the ledger."

On cross-examination by plaintiff's attorney he testified as follows:

"I have no recollection of ever having put any notice in any envelope addressed to the Farm & Home, nothing further than the general statements I have made. I don't remember having stamped such an envelope, or placing it in the postoffice: I don't remember what address was placed on it."

On being questioned by the court he said:

"My recollection is I told Mr. Davis to mail notices to Republic where addresses were not known. I have no recollection as to the Farm &.Home. My supposition is, that the notice to it was mailed either to Springfield or the Nevada office. Mr. Davis and I both knew that there was a Farm & Home and that it was located at Nevada.

"I made no record or memorandum of any kind, showing to whom notices were sent, or to indicate that notices were sent either to a certain party at a certain address. We simply took the sheets after we had gone through and checked back to see that we hadn't missed a sheet. Mr. Davis and I supplied the addresses not given, where we knew the addresses. We had no memorandum and kept none of any address which we supplied; the only place where the address was supplied, was on the envelope itself. I knew at the time that I took charge of the bank, that the Farm & Home office was in Nevada and that they had an agency in Springfield.

Harold J. Davis was offered as a witness by defendant, and we copy from the abstract of the record material parts of his testimony, together with questions and statements of the court, as follows:

"I live in Republic and was assistant cashier of the Bank of Republic before it closed. I have been there a little over two years. I was there when Mr. Winter was cashier and also when the Edmonsons were there. I was employed by Mr. Howard just as soon as he took charge of the bank. I took part in preparing notices to be mailed to each creditor of the bank; as assistant cashier my duties with reference to the ledger sheets was to post same; I posted the ledger on which this account was kept. I was familiar with the accounts and had done that work for two years. I knew where the Farm & Home was located; they were at Nevada and Springfield. The ledger sheet, Exhibit 'C' was in the bank and among the records in the deposit ledger at the time the bank closed. The ledger was kept in alphabetical form; this account should have been under the letter 'F.' I took the ledger sheet as the record to mail from, and took the addresses that were on the sheets and put them on the envelopes, and those that I didn't have we mailed to them at Republic; if we didn't know the address we mailed them to Republic. If I knew the address, and it was not on the sheet, we mailed to the address that we knew. I think I prepared all the envelopes myself, and put the notice of which Exhibit 'B' is a copy, in the

envelopes and sealed them up. I think, as I remember it, I stamped the envelopes; I don't remember who carried them to the postoffice. Mr. Howard or I one. After preparing the envelopes and placing the notices in them we took the envelopes and checked them with the ledger sheet; I did not discover any omissions.

"Q. State to the court whether or not you prepared an envelope and placed in it one of these notices, of which Exhibit 'B' is a copy, and addressed it to the Farm & Home, the plaintiff in this case? A. My knowledge is we did."

### Cross-examination by the Court.

"Q. What do you mean by your knowledge? You mean your recollection of that? A. No, I have no recollection; the records."

### Further Examination by Mr. Curtis.

"Q. You mean on account of the method which you employed in preparing and checking them? A. Yes, sir.

"THE COURT: I understand his answer to not mean he knows he did it, but thinks he did it."

And on cross-examination by attorney for plaintiff, he said:

"No, sir, I have no recollection of writing the Farm & Home on any one of the envelopes; I have no recollection of putting any stamp on any such envelope; I have no recollection of having put any such envelope in the postoffice; I only say that I did in that instance because I did in some of the others. I don't know what address I put on the envelope if one was addressed to the Farm & Home. No, sir, I have no memorandum or notation in the bank that any such notice was sent out, or when it was sent out or anything about it."

From the foregoing testimony it will be seen that there was some evidence that might indicate that a notice was mailed somewhere, but the trial court declared in his declaration of law given that a notice mailed to the plaintiff at its office in Springfield was not sufficient, and since we have herein held that the burden is on the defendant to show the notice was mailed to Nevada, and since the uncertainty as to its being mailed and where, as shown by the only two witnesses used, we think the testimony shows that the defendant did not sustain the burden, and therefore, plaintiff's first requested declaration of law should have been given, and the judgment should have been for the plaintiff.

The judgment should be reversed and the cause remanded with direction to enter judgment allowing plaintiff's claim as a general creditor of said bank as prayed in its petition.

It is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.