**OTIS et al. v. UNION TRUST CO. et al.**

Probate Court, Cuyahoa County.

No. 184146. Decided Nov. 9, 1944.

Julius Bloomberg, Eugene E. Wolf, Jos. G. Stashower, Cleveland, for Margaret Ranney Otis, Guardian.

Friebolin & Byers, Cleveland, for Carl D. Friebolin, Guardian.

Harold O. Ziegler, Cleveland, for Union Trust Co.

Baker, Hostetler & Patterson, Cleveland, for Union Properties, Inc.

James B. Dolphin, Cleveland, for Frankland Stafford and McRea Parker.

McConnell, Blackmore, Cory & Burke, Cleveland, for Winifred Stafford Parker and John McRea Parker.

Blakely, Ostrander & Blakely, Painesville, for Harry R. Collacott, guardian of Olive Maude Stafford Crum.

Hugh S. Jenkins, Columbus, H. O. Ziegler, Cleveland, for Superintendent of Banks of Ohio.

## OPINION

By BREWER, J.

A petition to vacate and set aside the approval of the final account and surcharge the executors and trustees for losses sustained by the estate was filed by Margaret Ranney Otis, guardian, et al., against The Union Trust Company, its liquidator, and Frankland Fish Stafford and John McRea Parker.

Oliver M. Stafford died testate on August 12, 1929. The Union Trust Company of Cleveland and Frankland Fish Stafford and John McRea Parker were appointed executors of his last will and testament.

On June 15, 1933, the Superintendent of Banks took over The Union Trust Company for liquidation. On December 2nd, 1935, the Superintendent of Banks filed in the Probate Court an application for authority to file suit against the estate of Oliver M. Stafford, deceased. On December 26th, an action was commenced in the Court of Common Pleas of Cuyahoga County. On June 10, 1937, an offer of settlement by all parties

to the action was submitted to the Court of Common Pleas, together with a proposed Journal Entry, which was approved by Judge Lausche. On September 12, 1937, the Superintendent of Banks filed a final account, which was approved and was recorded on October 27, 1937. On March 27, 1942, and on May 9, 1942, actions were filed in the Probate Court on behalf of the plaintiffs herein seeking to surcharge the executors for any loss sustained and asking for an order of this Court to set aside the settlement.

The plaintiffs contend that the defendant executors were guilty of a breach of duty in the retention of the stocks held in the estate including the six thousand shares of The Union Trust Company stock. It is argued:

First, that the retention by the executors of decedent's stock for a longer period than one year from the date of their appointment was a violation of §§10684 and 10697 GC.

Second, that under the facts existing in this case, such retention amounted to gross negligence, and

Third, that so far as The Union Trust stock is concerned, such retention constitutes self-dealing in violation of the principles laid down in the Ella Stone case (**Trusteeship of Stone**), **138 Oh St 293**, 34 N. E. 2d 755, 134 A. L. R. 1306.

These three contentions constitute the basis of plaintiffs' case and they are considered separately in the above order.

The first contention is purely one of law. It asserts, as a matter of statute requirement that all stocks coming into the hands of the executor, or administrator, must be reduced to cash within one year of his appointment and qualification. With respect to this claim, it suffices to say that no such rule or practice has been followed in the administration of decedent's estate by the Probate Courts in this State, nor do I find any language in any action of the Probate Code indicating that this was ever intended by the Legislature of Ohio. To hold that an executor is under an absolute duty to sell securities coming into his hands would nullify the right of beneficiaries desiring distribution in kind. It would make all executors and administrators guarantors of every share of stock held longer than one year. It would defeat the exercise of discretion on the part of decedent's personal representative. In all of these respects it would jeopardize rather than protect the property subject to administration.

The second contention is principally one of fact. So far as any case was made by the plaintiffs upon this issue, it is circumstantial. (Mr. Byer's Reply Brief, page 26) The six thousand shares of The Union Trust Company stock were retained by the executors. The other stocks owned by the

decedent were transferred to the estate of the decedent's widow shortly before the official closing of the bank in satisfaction of a loan to the defendant executors made by her to them during her lifetime for the payment of a debt to the Bank of Manhattan Trust Company.

In the light of hindsight it is easy to say that the executors of this estate should have sold all of the stock owned by the decedent as soon as they assumed their offices. On the other hand, the record shows that all of the stocks in question were purchased by the decedent as permanent investments; that in three of the companies, including The Union Trust Company, the decedent had been, for many years, the principal executive officer; that the primary beneficiaries of the decedent's estate, namely, the decedent's widow, his two children, and the guardian of his third child, desires, or at least acquiesced, that the stock be retained for distribution to the trustees under decedent's will; that none of the stocks involved could have been sold, except at prices substantially below the then current market, under unfavorable conditions and in competition with distressed sales; that throughout the period prior to the failure of The Union Trust Company substantially all its principal officers and directors were adding to their holdings of Union Trust stock, and executors honestly felt that the retention of the decedent's portfolio was in the best interest of the estate and the beneficiaries thereof.

Under these circumstances the question naturally suggests itself, if the plaintiffs in the present action had made an application to the Probate Court for an order requiring executors to sell six thousand shares of The Union Trust Company stock in the midst of the World panic and contrary to the judgment of supposedly well informed opinion, would the Court have so ordered. If that question cannot clearly be answered in the affirmative, and it seems to me that it cannot, then how can this Court condemn these same executors by holding that they must now account for the consequences of the financial failure of The Union Trust Bank.

The general rule is expressed in Re Trusteeship of Adam J. Conover, deceased, Ohio Prob. Ct., 5 Ohio Supp. 330, at page 337:

"It is true that a general decline in market value of securities prevailed for several years previous to filing the last account, which decline in market values has brought about a tremendous shrinkage in the value of this estate. The trustee is not liable simply because this shrinkage has occurred. The trustee is·only liable for the loss to the

trust fund when in the exercise of ordinary prudence it could or should have taken the necessary steps to prevent the loss.

"What did the trustee fail to do which is alleged to be a breach of trust? The answer is that it failed to sell on a rapidly declining market numerous securities for which no ready or active market could be found. In failing to sell these securities the trustee simply failed to do what practically all trustees and fiduciaries and private individuals in general failed to do during the last several years. That this country and the whole civilized world was caught in an economic maelstrom of unprecedented dimensions which has either wrecked or seriously affected almost every line of business in the country, and in fact threatened the structure of government itself, is a fact so well known to all that little evidence on this point would suffice to convince the court that the situation was so unusual and the financial and business world was in such a state of confusion that no trustee as a matter of law, should be held responsible for a depreciation in the value of securities, simply because it pursued a 'watchful waiting' policy which was the course of action followed by the owners of stock in general throughout the country.

"This court is ready to announce that it will not hold any fiduciary responsible for a depreciated value of the trust estate due to general decline in market values of securities during the last several years, if the liability of the trustee is sought to be fixed on the sole ground that the trustee failed to sell securities on a declining market. However, if the fiduciary is in possession of facts and circumstances which would reflect unfavorably on the financial stability of any company which would unduly increase the hazard of retaining such securities, the fiduciary, in failing to dispose of such securities in face of facts which would lead a person of ordinary prudence in protecting and preserving his own estate, to sell, would be liable for any loss which is suffered by the estate by reason of the failure of the fiduciary to sell. Perry on Trusts, 7 Ed. §465."

Entertaining these views, the third contention of plaintiffs must be considered by itself. There is no evidence, or certainly no substantial evidence of actual fraud on the part of The Union Trust Company, as one of the three executors. The sole question is whether a corporate executor should be held liable in the absence of actual fraud or negligence for losses resulting from the retention of its own stock. Here again, the imposition of any such rule must be reconciled with the statutory rights of beneficiaries to a distribution in kind.

**328**

I have no doubt that the rule against self-dealing applies to all fiduciaries, including trustees, but I have the gravest doubt of the soundness of the rule which would require a trust company executor to sell within a year all of its own stock which may have been purchased by its decedent.

It is not necessary in this case to decide that under no circumstances would the retention by an executor of its own stock constitute self-dealing. The question is rather, whether an executor should be held to be under an affirmative duty to sell under the principles laid down in the Ella Stone case, supra. In the Stone case the bank was not charged as executor, neither was the bank, as here, one of the beneficiaries. In the light of the testimony of the witness, Stafford, and in the light of the whole record, this is not a case where the rule in the Ella Stone case should be applied.

The foregoing questions all have a bearing upon the remaining questions involved in this litigation. To reach them plaintiffs ask this Court, long after Term, to set aside its order approving the first and final account of the executors, and to set aside certain other orders entered herein and in the Court of Common Pleas. Of necessity plaintiffs contend that all such orders were obtained by fraud on the part of the defendant executors and on the part of the Superintendent of Banks. In support of their contention of fraud, plaintiffs offered in evidence portions of the records of certain suits in which the Superintendent of Banks had been a party prior to the entries herein sought to be vacated. From these records it is argued that the Superintendent of Banks, and his counsel, must necessarily have known that the orders now sought to be vacated were improper and the most that can be said for this evidence is that it tends to support certain conclusions of law asserted by plaintiffs with which the defendants are not shown, either then, or now, to agree. These is no evidence in the record that in the procurement of the orders sought to be vacated the defendants misrepresented, or concealed, any material facts purposely, or otherwise. In this state of the records plaintiffs have failed to sustain their contention of fraud.

This Court, of course, must consider the effect of the McIntyre Act, §710-92a GC. Plaintiffs make no claim that the principles laid down in the Ella Stone case have any application to the individual executors. In any view there is no evidence against them of negligence or fraud. Their beneficial interest in the estate and their relationship to the other beneficiaries preclude even the possibility of their having been influenced in the retention of the securities involved by

considerations inconsistent with their duties as executors. The evidence affirmatively shows that they were not so influenced. In this state of the record the individual executor defendants are clearly and completely dissolved from any claim or liability on their part for breach of duty as executor by reason of the retention of securities held in the Stafford estate.

If it should be considered that the situation of The Union Trust Company is not equally clear, we are at once confronted by the bar of the McIntyre Act. It is stipulated in the record that prior to the filing of the petition herein no claim was ever presented to the Superintendent of Banks on account of the transactions here complained of. To assume that it was the duty of the Superintendent of Banks to file claims against himself for act committed prior to the time when the Superintendent took possession of the bank defeats the very purpose of the Act. To assume that the individual executors fraudulently conspired to refrain from filing any such claim, or prevent any beneficiary from so doing, is not only unsupported by any evidence, but it is not claimed. The absence of any fraud on the part of any of the defendants makes it unnecessary to consider whether upon such grounds any exceptions exist to the requirement of the Act.

Sec. 710-92a GC provides as follows:

"Presentation and Proof of non book claims. At any time subsequent to the expiration of the date for filing claims as fixed by the superintendent of banks, pursuant to the provisions of §710-90 GC, he may give notice by publication once a week for four consecutive weeks in a newspaper of general circulation in the county in which the principal office of such bank is located, requiring the presentation and proof of all general claims not filed and not appearing upon the books of the bank, at a place and time to be fixed in such notice, which time shall be not less than 60 days subsequent to the date of the last publication of such notice.

"All claims not filed in accordance with the provisions hereof shall be forever barred from participation in any of the assets of such bank, and such notice shall so state."

The plaintiffs contend that the McIntyre Act does not apply to the present case. They advance as a reason that they had no knowledge of the claim at the time the McIntyre Act went

into effect and, therefore, could not file a claim until the filing of the final account, which was after the effective date of the McIntyre Act.

Considerable emphasis to sustain this position is placed upon the Runcie case (In re Runcie's Estate), Ohio Prob. Ct., 3 Ohio Supp. 42. The claim against the Runcie estate grew out of a double liability assessment on Union Trust Company stock. An appointment of an administrator was made April 15th, 1933. The Superintendent of Banks made his assessment on July 31, 1934. This court sustained the position of the plaintiff, holding that it was impossible for him to present his claim within the four month period and that the claim, therefore, was not barred, and §10509-134 GC applied.

The Court, however, states, 3 Ohio Supp. on page 44: "After the Woodside Co. had sold the stock and received value for it, it had no knowledge, whatsoever, of any liability until the middle of 1937, at which time they received notice for the first time, according to the evidence, that by §710-75 GC, it was liable for the assessment. * * * The claim of the petitioner not having accrued until long after the death of the decedent, and not until long after the time prescribed by the statute for the presentation of claims to the administrator for allowance, the Court must conclude that this claim is not the kind of claim covered by the Statute, which at least by implication embraces only actual claims and not claims which have not yet accrued or which do not exist. It is, therefore, the finding of this Court that §10509-112 and §10509-134 GC are not applicable to the case at bar."

In Zuroff v. Westchester Trust Company, 273 N. Y. 200, 7 N. E. 2d 100, 109 A. L. R. 1401, the Court considers claims against a corporation in liquidation. On page 204 of the opinion in 273 N. Y., at page 101 of 7 N. E. 2d the Court states: "No actions or proceedings may be taken in the enforcement of claims not filed within the time prescribed. (Matter of Societa Principessa Iolanda Margherita DiSavoia v. Broderick, supra [260 N. Y. 260, 183 N. E. 382]). The fact that the circumstances constituting the basis of a claim may not be discovered before the expiration of the time for filing claims does not authorize a filing and proof at a later date. (Matter of Bank of U. S. 269, N. Y. 578, 199 N. E. 679), nor, since section 72 does not constitute a statute of limitations, does infancy affect the requirement of compliance with the statute or extend the time specified in the superintendent's notice. (Schwarz v. Broderick, 269 N. Y. 610, 199 N. E. 696.) The same rule must necessarily apply to the late discovery of fraud. The

purpose of these sections of the Banking Law is to provide a comprehensive and exclusive means for ascertaining claims and for a speedy distribution of assets of a moneyed corporation in liquidation. Matter of Egan, 258 N. Y. 334, at page 340, 179 N. E. 757."

In the case of First National Bank of Colorado Springs v. Holt, Commissioner of Finance, 1942, Mo. App., 158 S. W. 2d 229, the Court held, on page 231: "This section has been uniformly construed to be a special statute of limitations, the effect of which is to bar any claim against a defunct bank in the hands of the commissioner of finance for liquidation unless such claim is filed with the commissioner within the time limited by the statute. Bowersock Mills & Power Co. v. Citizens' Trust Co., Mo. App., 298 S. W. 1049; Harvey v. Peoples Bank, Mo. Supp. 136 S. W. 2d 273; Farm & Home Savings & Loan Ass'n of Mo. v. Howard, 224 Mo. App. 532, 30 S. W. 2d 631; Neathery v. Wells-Hines Trust Co., 229 Mo. App. 87, 75 S. W. 2d 83. The requirement for notice must of course be followed strictly. (Farm & Home Savings & Loan Ass'n of Mo. v. Howard, supra); and the sole exception to the application of the statute is that in the event the commissioner fails to give the character of notice which the statute requires and which the particular claimant is lawfully entitled to receive, then the period of limitation does not run against the claim. Mann v. Bank of Greenfield, 323 Mo. 1000, 20 S. W. 2d 502."

The sufficiency of a notice given by the liquidator is not raised in the instant case. It seems to be the universal rule that limitation statutes affect persons not sui juris as well as competent persons, unless there is a saving clause in the Act. In **Breen, Adm'r v. Conn, 64 Oh Ap 325, on page 327,** 28 N. E. 2d 684, on page 685, the Court held: "Sec. 10509-112 GC, is what is known as a non claim statute (**Beach v. Mizner,** supra [**131 Oh St 481, 3 N. E. 2d 417**]) that is, one which required an act to be done as a prerequisite to the accrual of a cause of action; and the general rule as to such statutes is that all persons, whether under disability or not, are bound thereby unless excepted from their operation by a saving clause. Such rule was announced in **Favorite v. Booher's, Adm'r, 17 Oh St 548,** and at that time §11229 GC, was in force (2 S & C 949, Section 19)."

The plaintiffs contend that the liquidator had knowledge of the claim, had custody of the records and books of the estate, and therefore, presentation was unnecessary.

A similar contention was made in the case of **Stanley v.**

**Hart, 29 O. O. 35,** affirmed by the Court of Appeals[1] and by a divided Supreme Court, **142 Oh St 528,** 53 N. E. 2d 197. The decision of Judge McNamee is as follows:

"It is the contention of the plaintiffs that the claims of the certificate holders appear upon the books of the bank and are not within the purview of the McIntyre Act. This claim must be rejected until October, 1933, the certificate holders appeared upon the books of the bank as beneficial owners of the property, legal title to which was held by the bank. Thereafter the books of the successor trustee reflected the certificate holders' beneficial ownership of the property and the legal title in the successor trustee. At no time was there any entry or record upon the books of the bank indicating that the certificate holders asserted a claim to the recovery of money. * * *

"A further proposition urged by plaintiffs is that the provisions of the McIntyre Act are inapplicable 'because it is the duty of the superintendent to recover the property and treat the certificate holders as creditors.' This claim is untenable. The McIntyre Act is definite and unambiguous in its terms. No member of the class of claimants therein referred to is exempt from compliance with its mandatory requirements. It recognizes no exceptions."

The superintendent of banks has no power and owes no duty to consider any claim filed after the effective date of the McIntyre Act. **Fulton v. General Motors, 130 Oh St 494,** 200 N. E. 636.

The McIntyre Act is a special statute of limitations governing the presentation of claims against an insolvent bank in the hands of the liquidator. So far as this Court's attention has been directed, the provisions of this Act make no exceptions whatsoever which would prevail in favor of the plaintiffs in this case for failure to file their claim within the time prescribed by §710-92a **GC.**

Other questions have been raised by the plaintiffs, but such other questions are either disposed of by what has already been said, or their disposition is rendered unnecessary thereby.

A journal entry will be made ·accordingly.

---

1. No written opinion—Decree for defendants as in Common Pleas Court.