J. M. Logrbrink, Appellant, v. Eugene State Bank, Harry Shaffner, Commissioner of Finance of the State of Missouri; Harry H. Kay, Special Deputy Commissioner of Finance in Charge of the Affairs, Property and Liquidation of said Eugene State Bank, Respondents.—209 S. W. 2d 265.

Kansas City Court of Appeals. Opinion delivered March 1, 1948.

*Herbert W. Ziercher* for appellant.

518

*Sam S. Haley* for respondents.

BOYER, C.—Plaintiff in this action, as the owner of two "B" capital notes issued by the bank to him, sought a judgment to the effect that he was entitled to share pro rata with other "B" capital note holders in an alleged surplus in the hands of the commissioner of finance in charge of said bank, after the payment of all claims superior to said capital notes. In a jury-waived trial, the court found the issues in favor of defendants and against the plaintiff and dismissed his petition. From that judgment the plaintiff has duly appealed.

From the pleadings, admissions, and a stipulation of the parties in this case, it appears that the Eugene State Bank was declared insolvent by a resolution of its board of directors March 13, 1940, and that the state commissioner of finance thereupon took charge of the affairs of said bank; that at the time plaintiff was the owner of a certain "B" capital note No. 63 in the sum of $1825; that his name appeared on the books of the bank as the registered holder of said note and also as a depositor; that said note was issued under the provisions of Art. 1, Chapter 39, R. S. Mo. 1939; that on September 6, 1940, the special deputy commissioner in charge of the bank received a claim from plaintiff based on this "B" capital note, which claim he rejected and refused to approve on the ground that the time for filing claims had expired on July 27, 1940, and on September 7, 1940, he so notified plaintiff by letter; that no action was instituted by plaintiff against the commissioner of finance, or his deputy, respecting said claim until April 2, 1943; that notice for the presentation and proof of claims was duly published in a newspaper according to the requirements of law; that said notice provided the last date for presentation of proofs would be July 27, 1940; that plaintiff did not present a claim on said note or make proof thereof on or before said date.

It further appears by stipulation of the parties that at the time the bank was closed, T. W. Bond was the registered holder of "B" capital note No. 67 in the sum of $1925, and that his name also appeared as a depositor; that the plaintiff at the time of the presentation of this cause was the owner and holder of that note, but that no claim was presented against the bank on account of said note or proof made thereof, and that none of the parties instituted any action against the commissioner or his special deputy respecting the above described note until April 2, 1943.

The petition in this case is in two counts, based respectively upon the two notes in question. Plaintiff alleges his ownership of the notes;

that he received no notice to present his claim against the bank; that neither the commissioner of finance nor his special deputy at any time mailed or caused to be mailed to him any notice to present his claim against said bank as required by Sec. 7928, R. S. Mo. 1939; that under authority of law the bank designated the manner in which said notes might be retired in the event of liquidation, as shown by the terms of the notes.

Plaintiff further alleges that said capital notes were a part of a series totaling $10,000, issued by the bank by the provisions of which, and the laws of Missouri, said notes were junior and subordinate to all obligations of said bank except the obligations to the stockholders of said bank; that in the course of the liquidation of said bank all obligations superior to the obligations of "B" capital notes of said bank have been fully paid, and that there remains in the hands of the commissioner of finance for distribution, pro rata among the holders of "B" capital notes, a considerable sum of money the amount of which is unknown to the plaintiff, but from which plaintiff is entitled to his pro rata share as holder of said notes.

Plaintiff further alleges that on the ——— day of ———, 1940, he did deliver to the special deputy commissioner of finance in charge of the affairs and liquidation of said bank, his claim against the bank on said note No. 63, which said claim was rejected by the special deputy commissioner who refused to approve the claim so filed.

The answer puts in issue the question as to whether notice to file claims was properly given and alleges that on March 25, 1940, the special deputy commissioner notified all persons, including the plaintiff, who had claims against the bank to present same to him and make proper proof thereof within four months from the date of said notice to creditors; that notice was mailed to plaintiff with postage prepaid; that said notice provided that the last day for filing claims would be July 27, 1940. It is also alleged that a newspaper publication of said notice was duly made; that plaintiff did not file a claim against the bank on or before July 27, 1940, the date specified in said notice as being the last day for filing claims, and that he is therefore barred by Sections 7928 and 7932, R. S. Mo. 1939. The allegation in the petition that there is a surplus in the hands of the special deputy commissioner is also denied.

Plaintiff had filed a previous suit upon the same notes on April 2, 1943, which was tried before Judge Hollingsworth then sitting in the Cole County Circuit Court. At the close of the evidence in that case the trial judge announced his finding that the notice to file a claim under the statute had been lawfully given. Plaintiff requested that he be allowed to take a voluntary nonsuit before judgment was entered. The request was granted and the cause was dismissed, and the present case was filed August 2, 1944. By agreement of the parties a transcript of the evidence in the previous case was to be used as evidence in

this case, subject to proper objections and the right to introduce additional evidence.

Testifying in his own behalf in the present case, plaintiff stated that he never at any time received a mailed notice from the deputy finance commissioner in charge of the bank, but that he did receive a notice from the liquidator for the Federal Deposit Insurance Corporation; that someone from the FDIC filled out his claim on his deposit; that the only registered mail which he received from Mr. Hutchinson, the deputy finance commissioner, was a notice regarding his son's loan which he paid. He further stated that he did not know why he did not file a claim on the "B" capital note, and did not know it belonged in the category for which claims had to be filed; that he never gave a thought to filling out his claim on the "B" note; that "I was probably in a hurry and did not have two minutes more to spare." He further testified that he lived about a quarter of a mile from Eugene, where he received his mail and that he had a lock box at the postoffice and no one else had access to it; that he was a depositor and his name was on the deposit ledger; that he did not recall a visit to Mr. Hutchinson at the bank on September 6, 1940, respecting a claim, but he did recall receiving a letter from Mr. Hutchinson informing him that he would not recognize the claim and that he took no action respecting the claim until April 2, 1943.

In the previous trial, plaintiff testified that the "B" capital note represented money put into the bank when the commissioner of finance wrote the common stock down; that the total issue of said notes was $10,000, and that he owned both of the notes referred to.

On cross-examination he stated that he resigned as an officer of the bank in 1939; that he had been vice-president from 1933 until his resignation; that he did not receive a notice from Leslie Hutchinson regarding the liquidation and did not know whether one had been mailed to him; that he did file a claim for the money he had on deposit and stated that he did not receive a notice, but happened to drop by and heard someone say that the depositors were being paid; that he had no heated argument with Mr. Hutchinson about the matter, nor did he discuss the "B" capital notes with him; that he did not know Mrs. Hollenbeck. Plaintiff introduced a letter which he had received from Mr. Hutchinson, dated September 7, 1940, rejecting his claim and refusing to allow it for the reason heretofore. stated. Photostatic copies of the notes are shown in the transcript.

Harold S. Hutchinson testified as a witness on behalf of defendants at the first trial and stated that he was an attorney associated with his father, Leslie B. Hutchinson, who was the special deputy commissioner for the bank; that he had worked with his father in the liquidation of the bank during the first ninety days of said liquidation; that his secretary, Mrs. Hollenbeck, and a Miss Randall were also engaged in the work at the bank; that he supervised the prepara-

tion of a printed notice to creditors of the bank; that the notices were printed at Vienna, and were identical with the printed notice in the newspaper; that they were enclosed in an envelope and mailed at Eugene to the plaintiff and to T. W. Bond on the third or fourth of April; that he checked the envelopes and cross-checked them; that every person who had a claim got a notice; that plaintiff's claim for his deposit in his checking account was $6.97; that he filed a claim for that amount on April 5, and it was offset against a note; that after the bank closed plaintiff was in the bank four or five times; that on April 6 or 7, his father and plaintiff had a conversation at the bank concerning the "B" note, and plaintiff said: "Well, with no preference we won't get anything out of it. * * * If I can't get it preferred then I won't file at all"; that the record of the "B" note holders was kept in a book at the bank and notice was sent to all holders of "B" notes; that "we checked the names of the holders of the "B" notes"; that four or five holders of "B" notes filed their claims. "I personally checked the envelopes containing notice that went out to the claimants." Both plaintiff and Mr. Bond were listed as depositors and both filed claims for the amount of their deposits.

Gladys Hollenbeck testified that she assisted in the liquidation of the bank; that she was there immediately after the closing of the bank and up to the middle of July; that they received the printed notices to creditors from the printer, checked the list of creditors of the bank and addressed envelopes to each of them, inserted the notices and mailed them to all people who had claims against the bank according to the list and inventory reported by the State; that the name of T. W. Bond appeared on the inventory and that she mailed a notice to Mr. Bond, first-class postage, and one to the plaintiff; that Harold Hutchinson and one of the girls from FDIC checked the notices with her; that in the envelopes that went to Mr. Bond and plaintiff were printed notices to come in and file their claims before July 27, and a blank upon which to file the claim; that the notice was the same as that published in the paper; that she helped to insert the notices in the envelopes, helped stamp the envelopes and carried them to the postoffice. When asked if she had any personal recollection of inserting the notice in an envelope addressed to J. M. Logrbrink, she replied: "I couldn't say as to any one envelope in particular but every envelope had a notice placed in it; we sent out envelopes to everyone who had a deposit. I put the notices in the mail myself. We sent notices to the people who appeared to have claims against the bank. * * * The lists were checked and rechecked before the envelopes went out of the bank and they were then carried to the postoffice. * * * They were all checked and rechecked, stamped and sealed and checked again before they left the bank. All of the notices were mailed." The foregoing is the sub-

stance of all the evidence in the case. The court took the cause under advisement and granted time for the filing of briefs.

According to the opening statement of counsel for plaintiff there are just two issues in the case. First, that notice was not given to plaintiff by mail as required by statute; and second, that even if notice by mail had been given, under the circumstances of this case, plaintiff was not required to file a claim with the special deputy commissioner due to the character of the notes and on account of a certain provision contained in them for the manner of retirement in the event of liquidation. These are the points that are presented in the brief on this appeal for our consideration. It is first contended that under the evidence the court was not authorized to find that notice to file claims had been mailed to creditors; that the burden of proof was on the defendants to establish such fact and that the burden was not sustained. To maintain the plea of limitation relied upon by defendants, it is no doubt true that the burden of proof was on the defendants to show that lawful notice to prove their claims had been given to creditors. First National Bank of Colorado Springs v. Holt, 158 S. W. (2d) 229; Killpack v. Baring State Bank, 61 S. W. (2d) 260, 263; Farm & Home Savings & Loan Assn. v. Howard, 224 Mo. App. 532, 30 S. W. (2d) 631, 633.

Respondents do not contend that the law is otherwise than that stated in reference to the burden of proof, but maintain that the proof was ample to meet every obligation on the part of the liquidator to show that he had mailed notices to all creditors as required by the statute. We think respondents are right in this contention and that the evidence fully justifies the conclusion of the trial court upon this issue as shown by the decree. The only evidence offered by plaintiff to support the allegation of his petition that no notice was ever mailed to creditors was his testimony that he did not receive a notice by mail and that he did not know whether such notice had been mailed or not. He admitted receiving other mail addressed to him by the liquidator, and in view of the positive testimony of defendants' witnesses that notice was mailed to plaintiff the trial judge had ample reason to resolve the issue as he did. He was not required to believe the testimony of plaintiff.

The next point in this case which is urged by appellant is that the court erred in not finding that the claim of the holder of a capital note, being subordinate to the claims of depositors and other general creditors, need not be presented within four months under Sec. 7928, R. S. Mo. 1939. It is argued that plaintiff's claim arising out of "B" capital notes was not within the category of claims upon which proof must be made under the provisions of said section, and that it was unnecessary for plaintiff to file a claim. This position is based upon the statutory authority under which such notes are issued and a certain provision in the notes themselves for the manner of payment

in the event of liquidation. All references to sections of the statute refer to the Revised Statutes of Missouri 1939, unless otherwise indicated. Special reference is made to Sec. 7906, authorizing the issuance of capital notes, and Sec. 7907 (D) which provides that "such capital notes shall at the time of their issuance be, and shall at all times thereafter remain, subordinate in rank and subject to the prior payment of all of the debts and obligations of such bank or trust company except certificates of indebtedness heretofore issued, and such bank or trust company may, for the security and protection of the holders of such capital notes, agree upon such restriction upon the distribution or payment of dividends, on its capital stock as the Board of Directors may decide." Paragraph 14 of the capital notes under consideration provides in part that "in case of liquidation, whether voluntary or involuntary, all depositors and other creditors of the Bank (except the owners or holders of indebtedness subordinated to the "A" Capital Notes and "B" Capital Notes as to payment of principal and interest) shall be entitled to be paid in full before any payment shall be made on account of principal of or interest on the "B" Capital Note. After payment in full of all sums owing to such depositors and creditors, and to the registered holders of the "A" Capital Notes, the registered holders of "B" Capital Notes at the time outstanding shall be entitled to be paid ratably according to the aggregate principal amount of the "B" Capital Notes held by them, respectively, from all the remaining assets of the Bank."

Relying upon these provisions, counsel for appellant argues that inasmuch as the notes in question are made subordinate to all debts and obligations of the bank, these "B" capital notes have no bearing upon the liquidation since the commissioner does not include them among the creditors in distribution. If there are any assets remaining after the commissioner has completely distributed to the claimants, the holders of these notes would receive payment in the same manner as would the stockholders. Appellant therefore likens his situation to that of a stockholder who would not be required to file a claim. Counsel further states in the brief that "the notes were registered on the books of the bank in the same manner as stock and the question resolves itself to whether a holder of a "B" Capital Note is a creditor and claimant within the meaning of the Revised Statutes of Missouri, Section 7928." Reference is made to Commerce Trust Co. v. Farmers Exchange Bank of Gallatin, 332 Mo. 979, 61 S. W. (2d) 928. The opinion in that case gives extended consideration to the meaning of the word "creditors" as referred to in various sections of the statute. Among the definitions cited is: "Anyone who has a right to require the fulfillment of an obligation or contract for the payment of money." Another such definition is: "A creditor, in its strict legal sense, is one who voluntarily trusts or gives credit to another for money or other property, but, in its more general or ex-

tensive sense, is one who has a right by law to demand and recover of another a sum of money on any account whatever. * * * The word is susceptible of latitudinous construction.'' Counsel for plaintiff further says that so far as appellant has been able to determine the courts have not ruled on whether the holder of a capital note issued under our statutes is a creditor within the definitions given.

We think the case rules the question that under the evidence in the pending case plaintiff should be held to be a creditor and a claimant of the bank in liquidation. By the express terms of the notes in question the bank, for value received, promised to pay the payee the sums designated in the notes at a specified time and at a stated rate of interest. They constituted contracts between borrower and lender, and unquestionably established the relationship of debtor and creditor. Being a creditor, if plaintif desired to be recognized as a claimant he was required to file a claim within the time specified in the notice to creditors. Sec. 7928 provides in part that the commissioner shall notify all persons who may have claims against the bank to present same to him and make proof thereof within four months from the date of said notice, and shall specify in such notice the last day for presenting such proofs, and ''after the date specified in such notice as the last day for presenting proof of claims the commissioner shall have no power to accept any claim.'' Sec. 7932 provides that ''when the time within which the commissioner is required to approve or reject claims has expired and at any time within six months thereafter, a claimant whose claim has been duly filed and has not been approved by the commissioner may institute and maintain an action thereon against such corporation. No action shall be maintained against such corporation while the commissioner is in possession of its affairs and business unless brought within the period of limitation specified in this section. In all actions of proceedings instituted against such corporation while the commissioner is in possession of its property and business, the plaintiff shall be required to allege and prove that the claim upon which the action is instituted was duly filed and that sixty days have elapsed since the expiration of time for filing said claims and that said claim has not been approved.'' From the admitted facts in this case, plaintiff did not file any claim with the commissioner on either note within the time required, nor did he institute any action within the period of limitation prescribed. It is also observed that the petition in this case does not contain the allegations which are specified it should contain in the statute last above quoted.

In the case of Commerce Trust Company v. Farmers Exchange Bank of Gallatin, 332 Mo. 979, 61 S. W. (2d) 928, plaintiff sought recovery of trust funds in the hands of the liquidator. No claim was filed with the commissioner of finance within the time required for the filing of claims nor was suit filed until after the time required by the statute

for the filing of suits had expired. Plaintiff contended that its right to recover was not limited by the provisions of the statute relating to the filing of claims since the amount claimed represented a trust fund belonging to plaintiff and was not a claim of a *creditor* of the insolvent bank. The opinion prepared by an able commissioner and adopted by the court en Banc, among other things, holds that the statute relating to the Department of Finance provides a complete and exclusive scheme for liquidation of insolvent banks and disposition of their assets. After an extended review of various sections of the statute in question, including the ones similar to and containing the same provisions as sections 7928 and 7932, on page 987 of the State Report the court said: "It seems to us clear that these statutory provisions contemplate and were intended to require the prompt presentation and disposition of all claims of whatever character against an insolvent bank, at least where, as in this and similar cases, the claim is not for possession of specific property but one in which the claimant seeks to recover and practically can only recover by an award to be paid out of the assets in the hands of the liquidating commissioner, including those to which the bank holds title. Until all such claims are presented and determined the bank's assets cannot be properly distributed and its affairs wound up." It was ruled that the word "creditors" included claimants in the situation of plaintiff in that case, and under the facts in the case plaintiff was not entitled to recover. Later decisions of our appellate courts following the pronouncements in the Commerce Trust Company case have consistently ruled that the statute limiting the time for filing claims and bringing actions against insolvent banks applies to *all claims of whatever character*, except actions for the recovery of specific personal property, and it also applies to proceedings in equity to reach assets in the hands of liquidating officers. Ogan v. Farmers and Merchants Bank of Chillicothe, 231 Mo. App. 11, 17, 90 S. W. (2d) 438, Neathery v. Wells-Hine Trust Co., 229 Mo. App. 87, 75 S. W. (2d) 83; First National Bank of Colorado Springs v. Holt, 158 S. W. (2d) 229. Bowersock Mills & Power Co. v. Citizens Trust Co., 298 S. W. 1049, was one of the early cases holding that non-compliance with the statute in filing a claim or bringing suit within the statutory period barred recovery. The contention of appellant that because his notes were subordinate in rank and subject to the prior payment of debts and obligations of the bank it was unnecessary to file a claim or bring suit within the statutory period appears to be without any substantial merit in view of the decisions heretofore cited. But it appears to be true, as appellant says, that there is no Missouri case directly on the point deciding the status of a capital note holder.

There is a case in point cited by respondent. It is Federal Deposit Insurance Corporation v. Department of Financial Institutions, 44 N. E. (2d) 992, which appears to rule upon an analogous situation

adversely to the contention of appellant that he was not a creditor, but entitled to a status similar to that of a stockholder. That case was decided by the Appellate Court of Indiana en banc. The principal contest in the case was between the Federal Deposit Insurance Corporation and the Reconstruction Finance Corporation. The FDIC was seeking the recovery of interest which had accrued subsequent to the insolvency of the bank. This was adverse to the interest of the RFC, which was the owner of an income debenture issued to it by the bank promising to repay an amount of money obtained on a specified date with interest. One paragraph of the debenture provided that upon liquidation depositors and other creditors should be paid in full before any payment was made on the debenture. The principal question considered and decided was whether the RFC, as the owner of the debenture, was a creditor or stockholder. The opinion, l. c. 994, states: "It is generally conceded that the position of creditor and stockholder are mutually exclusive of each other and that one cannot logically be a creditor and stockholder by virtue of the same instrument in respect to the same fund." It was decided that the debenture was a debt of the bank issuing it and created a debtor and creditor relationship between the bank and the RFC. The opinion further states: "The fact that the debenture "A" in the instant case is subordinate to the obligations of the bank to its depositors and others of its creditors does not mean that it evidences stockholders' status rather than a debt."

In view of the foregoing authorities the conclusion here is that the status of plaintiff as the owner of "B" capital notes was that of a creditor; and that because of his failure to file proof of claim with the commissioner and to institute suit in the manner and within the time prescribed by the sections of the statute heretofore quoted, he was not entitled to recover in this case. Therefore, the judgment of the trial court should be affirmed and the Commissioner so recommends. *Sperry, C.*, concurs.

PER CURIAM.—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.